**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
State of Connecticut and                                    )
Mashantucket Pequot Tribe,                          )
                                                                          )
        Plaintiffs,                                            )
                                                                          )
        v.                                                         )     Civil Action No. 1:17-cv-02564-RC
                                                                          )
Ryan Zinke, in his official capacity as       )
Secretary of the Interior, and the U.S.      )
Department of the Interior,                         )
                                                                          )
        Defendants,                                         )
                                                                          )
and                                                                    )
                                                                          )
MGM Resorts Global Development,            )
LLC,                                                                 )
                                                                          )
        Defendant/Intervenor.                        )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

      Plaintiffs the Mashantucket Pequot Tribe ("Tribe") and State of Connecticut ("State") seek to amend their complaint to include three new counts against Defendants Secretary of the Interior Ryan Zinke and the United States Department of the Interior ("Federal Defendants") following the Court's dismissal of Plaintiffs' original claims. Based on the liberal pleading standards of Fed. R. Civ. P. 15, the close relationship between Plaintiffs' amended claims and original claims, the absence of any undue delay or prejudice to Defendants, and because the claims are not futile, the Court should grant Plaintiffs leave to amend their complaint.

**BACKGROUND**

      In 1989, the Tribe sought to negotiate a tribal-state gaming compact with the State. Following two years of litigation and negotiations, in 1991 the Tribe and State submitted to the

mediation process created under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* The mediator selected the State's compact proposal, the Tribe agreed to that compact, and ultimately the Secretary prescribed the mediator-selected compact as gaming procedures ("Secretarial Procedures").[1] With minor technical amendments, the Secretary published notice of the Secretarial Procedures in the Federal Register on May 31, 1991. 56 Fed. Reg. 24,996 (May 31, 1991). The Secretarial Procedures provide that it can be modified only by written agreement of the parties and published notification of the Secretary's approval of the amendments, also in accordance with § 2710(d)(3)(B). *See* Procedures ¶ 17 at 49–50. Since the Secretarial Procedures went into effect, the Pequot Tribe has conducted Class III gaming consistent with its terms.

In 1994, pursuant to IGRA, the Secretary also approved a gaming compact for the Mohegan Tribe of Indians of Connecticut ("Mohegan Tribe"), a federally recognized Indian tribe. Notice of that approval was published in the Federal Register at 59 Fed. Reg. 65,130 (Dec. 16, 1994). That Mohegan Compact is nearly identical to the Procedures with references changed to reflect the Mohegan Tribe. The amendment provision in the Mohegan Tribe's compact is identical to the amendment provision in the Procedures.

In or about 2015, the Pequot Tribe and the Mohegan Tribe (collectively, the "Tribes") began to consider a joint venture to operate a commercial casino outside of either Tribe's Indian lands. In connection with this joint venture, Plaintiffs began to discuss amending both the

---

[1] The Court has taken judicial notice of both the Secretarial Procedures and the Mohegan Compact which are available online at http://www.portal.ct.gov/DCP/Gaming-Division/Gaming/Tribal-State-Compacts-and-Agreements. *See* ECF No. 59-6 n.5. While the Tribal-State Compact that was selected by the mediator and issued as procedures has always been treated as such and has commonly been referred to as a compact (including within the document itself), for purposes of this Motion and to be consistent with the Court's decision, the Tribe is referencing the Tribal-State Compact as Secretarial Procedures.

Secretarial Procedures and Mohegan's compact to clarify that the Tribes' joint venture would not alter or compromise the Tribes' existing gaming arrangements and agreements with the State. Over the next two years, the Tribes also discussed these amendments, from both a substantive and procedural perspective, with the Department.

On July 20, 2017, the Pequot Tribe signed an agreement with the State entitled "AGREEMENT BETWEEN THE MASHANTUCKET PEQUOT TRIBE AND THE STATE OF CONNECTICUT" and related Memorandum of Understanding ("Tribal-State Agreement"), which were intended to amend the Procedures as described above. On the same day, Mohegan entered into an agreement and related memorandum of understanding with the State that was materially identical to the Tribal-State Agreement ("Mohegan Amendment"). On August 2, 2017, in accordance with prior guidance from the Department and the amendment provisions in the Procedures and Mohegan's compact, both Tribes submitted their respective agreements to the Department's Office of Indian Gaming for review and approval pursuant to IGRA and the implementing regulations. *See* ECF 1 ¶¶ 32-34.

The Federal Defendants thereafter failed to approve or disapprove the Tribal-State Agreement within 45 days as required by the Part 293 Regulations and IGRA. *Id.* ¶ 37. Instead, on September 15, 2017 (one day shy of the 45-day time period), Michael S. Black, the Acting Assistant Secretary—Indian Affairs, wrote a letter to the Tribal Chairman Rodney Butler (the "Black Letter"), confirming the Federal Defendants' receipt of the Tribal-State Agreement and purporting to "return" them to the Tribe without approving, publishing, or affirmatively disapproving them for any of the permissible reasons provided by § 2710(d)(8). *Id*. ¶ 37. Although neither the Tribe nor the State had consulted with Nevada Senator Dean Heller and Nevada Congressman Mark Amodei regarding the Tribal-State Agreement, both Senator Heller

and Congressman Amodei were copied on the Black Letter. *See* ECF No. 9-8; ECF No. 9-16 at 2. No one else was copied on the Black Letter. *See id.*

As implied by their receipt of Acting Assistant Secretary Black's letter, Senator Heller and Congressman Amodei were personally involved in trying to defeat the Tribal-State Agreement. This was not new. In 2016, when MGM Resorts International ("MGM") learned that the Tribe was considering the Tribal-State Agreement, Senator Heller proposed an amendment to a wholly-unrelated defense bill that would have blocked the Tribes' joint venture by preventing Indian tribes from operating commercial casinos in the same state where they operate casinos on a reservation. Similarly, the Tribes have since learned that both Senator Heller and Congressman Amodei advocated to representatives from the Interior Department that the Tribal-State Agreement should be rejected.

The Black Letter, in which the Federal Defendants failed to approve of the Tribal-State Agreement, was a complete about-face. As outlined in greater detail in the Amended Complaint, *see* ¶¶ 27-39, on repeated occasions from 2016 through the summer of 2017, the Federal Defendants assured the Tribe that they would approve the Tribal-State Agreement and never indicated any concern with either the process used by either Tribe to seek approval or missing information to make a decision. But apparently, after enormous political pressure from Senator Heller and Congressman Amodei, the Federal Defendants reversed course at the last minute without justification.

On November 29, 2017, the current Plaintiffs and the Mohegan Tribe filed suit against the Federal Defendants based on, *inter alia*, the Federal Defendants' failure to publish notice of both the Tribal-State Agreement and the Mohegan amendment that was deemed approved under IGRA, and its implementing regulations. ECF No. 1. Plaintiffs alleged two counts of violations

of the Administrative Procedure Act, 5 U.S.C. § 706, based on 1) the Federal Defendants' attempt to "return" the submitted Tribal-State Agreement rather than approve, disapprove, or acknowledge that it was approved, and 2) the Federal Defendants' failure to publish the notices of approval of the Tribal-State Agreement after it was deemed approved. ECF No. 1 at 9–11. Plaintiffs sought a declaratory judgment that the Tribal-State Agreement was deemed approved and an order or writ of mandamus directing the Federal Defendants to publish notice of approval. *Id.* at 10. On December 26, 2017, MGM filed a motion for leave to intervene. ECF No. 11. On February 5, 2018, the Federal Defendants filed a motion for partial dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF No. 18. The Federal Defendants argued that the Tribe's claims should be dismissed because the Tribe failed to allege a discrete duty the Secretary was required to take because the Tribe operates under secretarial procedures instead of a tribal-state compact. *Id.* at 12. On June 15, 2018, the Mohegan Tribe and the Federal Defendants stipulated to the dismissal of the Mohegan Tribe's claims against the Federal Defendants.[2] The State of Connecticut and the Pequot Tribe maintained their claims against the Federal Defendants. ECF No. 40. On September 29, 2018, the Court granted MGM's motion to intervene and granted the Federal Defendants' motion to dismiss the Pequot Tribe's claims. ECF No. 59.

      Plaintiffs now seek leave to amend their complaint to include three additional claims. A copy of the proposed amended complaint is attached as Exhibit A.

---

[2] Acting Assistant Secretary Black had also sent a letter to the Mohegan Tribe on September 15, 2017, materially similar to the letter sent to the Pequot Tribe, in which it purported to return the Mohegan Tribe's amendment to its compact. In another about face move, the Department subsequently conceded that the Mohegan Tribe's amendment—which is materially identical to the Tribal-State Agreement—had been deemed approved. 83 Fed. Reg. 25484 (June 1, 2018).

**ARGUMENT**

After the time has expired to amend a complaint as a matter of right, a plaintiff may amend a complaint by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). The grant or denial of leave to amend is committed to the sound discretion of the district court. *Anderson v. USAA Cas. Ins. Co.*, 218 F.R.D. 307, 310 (D.D.C. 2003). But "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989).

As long as the underlying facts or circumstances relied upon by a plaintiff "may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Thus, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* (quoting Rule 15(a)(1)); *see also Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Additionally, courts "generally consider the relation of the proposed amended complaint to the original complaint, favoring proposed complaints that do not 'radically alter the scope and nature of the case.'" *Sodexo Operations, LLC v. Not-for-Profit Hosp. Corp.*, 210 F. Supp. 3d 138, 143 (D.D.C. 2016) (citation omitted). The burden is therefore on the opposing party to show that there is reason to deny leave. *See In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003).

The Court should grant Plaintiffs leave to amend their complaint. *First*, the proposed amendments do not drastically alter the scope of the original complaint. *Second*, there is no undue delay in seeking this amendment and Defendants will not be prejudiced. And *finally*, the proposed amendment would not be futile.

### I.  The proposed amendments do not radically alter the scope of the original Complaint.

Plaintiffs seek leave to include three proposed counts against the Defendants. These claims are all based on the same events discussed in the original complaint: the Secretary's actions with respect to the Plaintiffs' submission of the Tribal-State Agreement.

Proposed Count 1 alleges that the Federal Defendants' purported "return" of the Tribal-State Agreement to Plaintiffs was arbitrary and capricious on its face. This count is the proper subject of relief under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), and is related to and consistent with Plaintiffs' original complaint and concerns the same underlying decision of the Federal Defendants to "return" the Tribal-State Agreement without approving it. ECF No. 1 ¶ 38. Especially now, in light of the ultimate approval of the Mohegan Amendment, there is no rational basis or legitimate reason to withhold approval of the Tribal-State Agreement, which is an identical amendment to materially identical underlying compacts.

Proposed Count 2 alleges that the Federal Defendants' failure to approve the Tribal-State Agreement was the product of improper political influence and was therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the APA. *See, e.g., D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1245 (D.C. Cir. 1971) (Where "political pressure … applied by certain members of Congress" contaminated the administrative decision-making process, "the impact of this pressure is sufficient, standing alone, to invalidate the Secretary's action."). This count asks the Court to review and vacate the same

decision in the original complaint – the Federal Defendants' refusal to approve the Tribal-State Agreement – and thus cannot be said to radically alter the scope of the original complaint. Though far more information has been uncovered in the ensuing months regarding the political pressure and its contamination of the decision-making process, Plaintiffs have previously set forth some of the factual predicate of this Count. *See, e.g.,* Plaintiffs' Opposition to Federal Defendants' Motion to Dismiss, for example, outlined the fact that MGM had lobbied the Federal Defendants not to act on the Tribal-State Agreement and that Nevada Senator Heller and Nevada Congressman Amodei, whose state is a major center of employment for MGM, each tried to impede the review process for the Tribal-State Agreement. *See* ECF No. 27 at 15. This count therefore relies on many of the same facts that Plaintiffs have already set forth in this litigation.

The third and final Count alleges that the Tribal-State Agreement between the State of Connecticut and the Pequot Tribe meets the definition of "compact" contained in 25 C.F.R. § 293.2 and relied upon by the Federal Defendants. *See* ECF No. 18 at 10. Section 293.2 defines a compact or tribal–state gaming compact as "an intergovernmental agreement executed between Tribal and State governments under the Indian Gaming Regulatory Act that establishes between the parties the terms and conditions for the operation and regulation of the tribe's Class III gaming activities." Under a plain language reading of the regulations, the Tribal-State Agreement that Plaintiffs submitted meets this definition and is subject to the 45-day deemed approved deadline provided in 25 CFR § 293.12.[3] *See also* 25 U.S.C. § 2710(d)(8)(C). This

---

[3] Plaintiffs' initial claim set forth in its original Complaint, ECF 1, was that the amendment to its mediator-selected Compact required approval or disapproval within 45 days pursuant to IGRA and its implementing regulations; further since the Secretary did not approve or disapprove, the amendment to the procedures was deemed approved. This Court rejected that argument holding that because the 45-day time period applied to amendment of compacts but not amendment to

proposed count alleges that the Federal Defendants' failure to treat the Tribal-State Agreement as a tribal-state compact that was deemed approved and to publish notice of their approval agency action was "unlawfully withheld." 5 U.S.C. § 706(1).

This count thus relies upon the same statutory framework as the claims in the original complaint—IGRA and the APA—and largely depends upon the facts that have already been alleged, including that the Federal Defendants provided technical assistance but then, instead of approving or disapproving the Tribe's Procedures within the 45-day deadline required by IGRA, claimed to "return" the Tribal-State Agreement seeking to amend the existing agreements and failed to publish notice of such approval in the Federal Register. ECF No. 1.

Thus, the newly amended complaint would not significantly alter the scope or nature of the case, and Plaintiffs should be granted leave to amend.

## II.     There has been no undue delay in amending the complaint and defendants will not be prejudiced.

In evaluating a motion for leave to amend, undue delay and resulting prejudice are closely intertwined. When considering undue delay, "the text of Rule 15 does not prescribe a

---

procedures, it was not deemed approved and the Court dismissed the claim. ECF No. 59. Plaintiffs preserve this claim for appeal and understand that this claim need not be included in the amended Complaint to preserve it for appeal. *See Jefferson v. Harris*, 285 F. Supp. 3d 173, 180–81 (D.D.C. 2018) (Agreeing with parties that a plaintiff "need not have re-alleged … his dismissed claims in order to preserve them for appeal under D.C. Circuit precedent.") (ellipses in original); *BEG Invs., LLC v. Alberti,* 85 F. Supp. 3d 13, 50 (D.D.C. 2015) (Contreras, J.) (Noting that there was "no support for Plaintiff's position regarding the need to repeat previously dismissed claims in order to preserve them for appellate review."). Finally, Plaintiffs note that the argument this Court rejected is analytically distinct from the one we assert here in Count III. Accepting for purposes of this matter, that amendments to gaming procedures are not subject to the 45-day rule because it is not considered an amendment to a tribal-state compact, (as this Court held), here we contend that the form in which the parties are required to amend the procedures pursuant to the amendment provision of the procedures is a Tribal-State Agreement, which itself meets the legal definition of a compact and there can be no dispute that IGRA mandates that compacts must be approved or disapproved within 45 days or be deemed approved.

time limit on motions for leave to amend …. Accordingly, a court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend." *Appalachian Voices v. Chu*, 262 F.R.D. 24, at 27 (D.D.C. 2009). "Nor does the prolonged nature of a case affect whether the plaintiff may amend its complaint …. Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice." *Id.* (citations omitted); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) ("In most cases delay alone is not a sufficient reason for denying leave. … If no prejudice to the non-moving party is found, the amendment will be allowed"). Accordingly, a plaintiff is not bound by the legal theories originally alleged unless a defendant is prejudiced on the merits. *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999); *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (holding court may deny leave to amend based on prejudice"[w]hen the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation."). "[T]o show prejudice sufficient to justify a denial of leave to amend the opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re Vitamins*, 217 F.R.D. at 32 (quotations omitted).

Here, Plaintiffs have not unduly delayed bringing this motion. Plaintiffs had consulted with the Department numerous times prior to submitting the Tribal-State Agreement for review. But it was not until after this action was filed, through their Motion to Dismiss, that the Federal Defendants informed Plaintiffs they believed the Pequot Tribes' amendment to the gaming procedures was not governed by the 45-day rule in its regulations, although a nearly identical amendment to a nearly identical compact (the Mohegan-State compact) is subject to the 45-day

rule. The Federal Defendants' partial motion for dismissal was not granted until September 29, 2018, ECF No. 59, and it was not until this motion was granted that Plaintiffs became aware of the need to amend their complaint to account for the Federal Defendants' new reading of IGRA and its regulations. *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (recognizing that "a grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim."). Further, some of the facts giving rise to Count II (undue political influence) were not discovered until after the lawsuit had been filed.

Nor is the amendment proposed so late in the litigation that Defendants would be required to engage in significant new preparation. The Court has yet to order discovery. *See Djourabchi*, 240 F.R.D. at 13. Indeed, almost all that has occurred in this litigation is briefing over who is a proper party to the case and whether the then-current claims could survive a motion to dismiss.

Moreover, there is no resulting prejudice to the Defendants. The addition of the three proposed counts to the complaint will not significantly alter the core of the theory on which the case has proceeded thus far. The new claims are not remote to Plaintiffs' previous claims but are based on violation of the same statute and similar factual allegations. Like the original counts, the newly proposed counts are grounded in the APA and Plaintiffs have already pled in their original complaint many of the facts on which the theories of recovery are based.

**III.   The proposed amendments would not be futile.**

Finally, the Court should permit Plaintiffs to amend their complaint because it would not be futile.

With respect to futility, a court "may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss." *Sodexo*, 210 F. Supp. 3d at 143;

*Appalachian Voices v. Chu*, 262 F.R.D. 24, 27 (D.D.C. 2009); *Bean v. United States*, 538 F. Supp. 2d 220, 227 (D.D.C. 2008). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss." *Appalachian Voices*, 262 F.R.D. at 27.

Defendants bear the burden of proving futility. *In re Vitamins*, 217 F.R.D. at 32; *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 48 (D.D.C. 2009). They could not meet that burden here.

For example, Proposed Count 1 alleges that the Federal Defendants' purported "return" of the submitted Tribal-State Agreement to Plaintiffs was unlawful final agency inaction and arbitrary and capricious on its face, an allegation that is consistent with the statutory language of IGRA and the implementing regulations. The Federal Defendants provided no legitimate basis to "return" the Tribal-State Agreement as opposed to approving it. This approach essentially vitiates the Federal Defendants' statutory and regulatory duty to approve or disapprove the agreement between the Tribe and the State. Even if the court were to find that the statutory 45-day requirement, itself, does not apply, that provision is a manifestation of congressional intent that decisions under IGRA should be made apace in furtherance of IGRA's central policy to aid tribal economic development and self-governance, and even more so when a tribe and state have come to agreement (as encouraged and envisioned by IGRA) on the terms and conditions under which Class III Gaming shall occur on Indian lands. Moreover, the Federal Defendants' disparate treatment of the substantively identical Mohegan Amendment and the Tribal-State Agreement is a textbook arbitrary and capricious decision.

The "return" of the Tribal-State Agreement was final agency inaction that is reviewable. *See, e.g., Pub. Citizen, Inc. v. Fed. Energy Regulatory Comm'n*, 839 F.3d 1165, 1172 (D.C. Cir. 2016). Here, the "return" of the Tribal-State Agreement without approval had the same net effect as a disapproval. And as the court held in *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 121 (D.D.C. 2015), "[j]udicial review is authorized when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, because an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief." Since the Federal Defendants' inaction was in effect a failure to approve and unlawfully maintain the status quo, it was arbitrary and capricious and it cannot stand.

Proposed Count 2, alleging improper political influence, will withstand a motion to dismiss because it is well supported by case law within the D.C. Circuit. *See, e.g.*, *Aera Energy LLC v. Salazar*, 691 F. Supp. 2d 25, 33 (D.D.C. 2010), *aff'd*, 642 F.3d 212 (D.C. Cir. 2011) (agency action must be set aside if it is found to be motivated in whole or in part by political pressures); *ATX, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1527 (D.C. Cir. 1994) ("Congressional interference so tainting the administrative process violates the right of a party to due process of law."); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246 (D.C. Cir. 1971) (agencies must make their decisions "based strictly on the merits and completely without regard to any considerations not made relevant by Congress in the applicable statutes"). The case law additionally provides that where there is a "strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review," discovery beyond the administrative record is permitted. *Ass'n of Admin. Law Judges v. U.S. Office of Pers. Mgmt.*, 640 F. Supp. 2d 66, 75 n.6 (D.D.C. 2009). Plaintiffs' allegations regarding Nevada's

congressional delegation's involvement in this process easily establish a *prima facie* case of improper political influence.

Count 3 alleges that the Tribal-State Agreement meets the definition of "compact" under the plain language reading of IGRA and its implementing regulations that the Federal Defendants have already advanced in this case. Am. Compl. ¶¶ 70-84. Previously, the Federal Defendants argued, and this Court agreed, that it matters not that all parties had consistently referred to the Procedures as a "Compact." What was important is that it did not meet the statutory and regulatory definition of a "compact" with respect to the 45-day rule for amendments of compacts. ECF 59 at 55-56. And here, Plaintiffs allege that even though they called the Tribal-State Agreement an amendment, and it does plainly amend the Procedures, the Tribal-State Agreement also falls squarely within the definition of a compact, especially in light of the specific provisions in the Secretarial Procedures on amendments. The Tribal-State Agreement is self-evidently "an intergovernmental agreement executed between Tribal and State governments under the Indian Gaming Regulatory Act" and it states the conditions under which the Tribe may conduct certain gaming activities, and thus established the "terms and conditions for" their gaming operations. This meets the definition of Compact under 25 C.F.R. § 293.2. And consistent with IGRA's requirement that the Secretary publish in the Federal Register "notice of any Tribal-State compact that is approved, or considered to have been approved," and the requirement in the Compact/procedures itself that it be amended through an intergovernmental agreement between the tribe and state and approved under the very IGRA provisions that govern tribal-state compacts, the Federal Defendants were required to publish notice of the Tribe's Procedures in the Federal Register. *See* ECF No. 1 ¶ 25.

The third amended count therefore states a relief that is likely to withstand a motion to dismiss. *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Osborn v. Visa Inc.*, 797 F.3d 1057, 1062 (D.C. Cir. 2015) ("a plaintiff should have the opportunity to replead so that claims will be decided on merits rather than technicalities"); *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 47 (D.D.C. 2009).

Because each of the amended claims would likely survive a motion to dismiss, amendment is not futile. Leave to amend should accordingly be granted to Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant it leave to file the attached First Amended Complaint.

Dated:  October 17, 2018        Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

/s/  Keith M. Harper
Keith M. Harper, Bar No. 451956
KHarper@kilpatricktownsend.com
Catherine F. Munson, Bar No. 985717
cmunson@kilpatricktownsend.com
607 14th Street, N.W., Suite 900
Washington, D.C.  20005
Telephone:  202-508-5800
Facsimile:  202-508-5858

*Attorneys for Plaintiff
Mashantucket Pequot Tribe*

STATE OF CONNECTICUT

/s/  Mark. F. Kohler
Mark F. Kohler
Assistant Attorney General
Mark.Kohler@ct.gov
Michael K. Skold
Assistant Attorney General
Michael.Skold@ct.gov
Connecticut Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Telephone:  860-808-5020
Facsimile:  860-808-5347


*Attorneys for Plaintiff*
*The State of Connecticut*