IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| State of Connecticut and Mashantucket Pequot Tribe,<br><br>Plaintiffs,<br><br>v.<br><br>Ryan Zinke, in his official capacity as Secretary of the Interior, and the U.S. Department of the Interior,<br><br>Defendants,<br><br>and<br><br>MGM Resorts Global Development, LLC,<br><br>Defendant/Intervenor. | ) | Civil Action No. 1:17-cv-02564-RC |

**FIRST AMENDED COMPLAINT**

**Introduction**

1. This action arises out of Plaintiffs' submission of an amendment to the gaming compact adopted as secretarial procedures of the Plaintiff Mashantucket Pequot Tribe for review and approval by the Secretary of the Interior ("the Secretary"). Rather than approving or disapproving the amendment, as required by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*., and its implementing regulations, the Secretary "returned" it to the Plaintiffs. Defendants' failure to approve the amendment was a direct result of undue political influence and is arbitrary, capricious and otherwise not in accordance with the law. Thus, Plaintiffs seek a declaration that Defendants' inaction is arbitrary and

capricious and injunctive relief requiring the Secretary to comply with the law by approving the amendment and publishing the approval in the Federal Register.

**Parties**

2. Plaintiff State of Connecticut ("State") is a sovereign state of the United States. The Attorney General brings this action on behalf of the State of Connecticut at the request of Governor Dannel P. Malloy to protect the interests of the state. Conn. Gen. Stat. § 3-5.

3. Plaintiff Mashantucket Pequot Tribe ("Pequot Tribe" or "Tribe") is a federally recognized Indian tribe, and, pursuant to the IGRA, it currently operates "Class III" gaming in Connecticut in accordance with a tribal-state gaming compact that was selected by a mediator and prescribed as procedures by the Secretary. Notice of the prescribed procedures or compact was published in the Federal Register at 56 Fed. Reg. 24,996 (May 31, 1991).

4. Defendant Ryan Zinke, the U.S. Secretary of the Interior, is sued in his official capacity. Pursuant to the IGRA, the Secretary and his delegates are charged with reviewing tribal-state compacts and amendments thereto governing Class III gaming on tribal land and approving or disapproving of said compacts and amendments. Secretary Zinke is responsible for the actions and omissions described in this Complaint.

5. Defendant U.S. Department of the Interior is an administrative agency of the United States responsible for administering and executing IGRA's requirements. The Department includes the Office of Indian Gaming and Secretary Zinke's delegates, such as Michael Black, former Acting Assistant Secretary for Indian Affairs ("AS-IA"). The Department is responsible for the actions and omissions described in this Complaint. The Department has an address at 1849 C Street, N.W., Washington, D.C. 20240.

6. Pursuant to the IGRA and other federal statutes, Congress has entrusted the Secretary and the Department with the duty of carrying out Congress's goals of promoting tribal economic development and self-governance and executing the federal government's trust responsibility to Indian nations.

7. Defendant/Intervenor MGM Resorts Global Development, LLC ("MGM") is a commercial casino operator and an employer, *inter alia*, in the State of Nevada.

8. In granting MGM's motion to intervene on September 29, 2018, the Court set certain conditions on the intervention. Doc. 59.

**Jurisdiction and Venue**

9. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question statute) because it arises under the laws of the United States; 28 U.S.C. § 1362 because this is a civil action by a tribe arising under the laws of the United States; and the Mandamus and Venue Act, codified at 28 U.S.C. § 1361, because Plaintiffs seek an order to direct the Defendants to act as required by federal law.

10. This suit alleges that the Department and the Secretary have failed to act in accordance with the IGRA. Accordingly, the Defendants have consented to suit under the Administrative Procedure Act, 5 U.S.C. § 702.

11. The requested relief is available under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the Mandamus and Venue Act, 28 U.S.C. § 1361.

12. Venue is proper pursuant to 28 U.S.C. § 1391(e) because (a) a substantial part of the events, actions, and/or omissions giving rise to the claims in this complaint occurred in this judicial district, and/or (b) the Defendants reside in this judicial district.

**Statutory and Regulatory Background**

13. IGRA, 25 U.S.C. §§ 2701-2721, provides a comprehensive regulatory framework for gaming activities on Indian lands which seeks to protect the interests of tribes and support tribal economic development and self-sufficiency.

14. IGRA provides that Indian tribes may conduct Class III gaming on Indian lands in accordance with gaming compacts with states in which those lands are located, including mediator-selected compacts that are initially issued as procedures. Pursuant to IGRA, the Secretary has the authority to approve these compacts under strict deadlines and conditions.

15. IGRA and its implementing regulations require that the Secretary must either approve or disapprove a compact or amendment within 45 days of submittal. If the Secretary fails to take either action within the prescribed 45 days, the compact or amendment becomes deemed approved by operation of law, or more specifically "*shall* be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter." 25 U.S.C. § 2710(d)(8)(C) (emphasis added); *see* 25 C.F.R. § 293.12.

16. Pursuant to the IGRA and its implementing regulations, the Secretary may only disapprove a compact or amendment for three reasons: (i) it violates the IGRA, (ii) it violates any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or (iii) it violates the trust obligations of the United States to Indians. *See* 25 U.S.C. § 2710(d)(8)(B); 25 C.F.R. § 293.14.

17. Once a compact or amendment is affirmatively approved or deemed approved by operation of law, IGRA and its implementing regulations provide that the Secretary "*shall*

publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved[.]" 25 U.S.C. § 2710(d)(8)(D) (emphasis added).

18. The Secretary must publish such notice of approval in the Federal Register within 90 days from the date the compact is received by the Office of Indian Gaming. 25 C.F.R. § 293.15(b).

19. A compact or amendment takes effect on the date that notice of its approval is published in the Federal Register. 25 U.S.C. § 2710(d)(3)(B); 25 C.F.R. § 293.15(a).

20. The Secretary has no authority to avoid IGRA's Federal Register publication requirement by placing an approved compact or amendment in limbo. 25 U.S.C. § 2710(d)(8)(D); 25 C.F.R. § 293.15. The Secretary has no authority to refuse to publish notice of an approved or deemed approved compact or amendment in the Federal Register. *Id.*

**Factual Background**

21. This action involves the "AGREEMENT BETWEEN THE MASHANTUCKET PEQUOT TRIBE AND THE STATE OF CONNECTICUT," dated July 20, 2017 and related Memorandum of Understanding also dated July 20, 2017 ("Tribal-State Agreement") submitted for review and approval to Federal Defendants pursuant to the IGRA and its implementing regulations. The Tribal-State Agreement was received by Federal Defendants on August 2, 2017.

22. The Tribal-State Agreement amends a mediator-selected tribal-state gaming compact between the Tribe and the State of Connecticut, that the Secretary reviewed and approved and, with minor technical amendments, published notice of the compact as prescribed procedures in the Federal Register on May 31, 1991 ("Secretarial Procedures"). The Tribal-State Agreement also meets the definition of "compact" in and of itself.

23. The Secretarial Procedures themselves contain clear direction as to how the State and Tribe may modify or amend the terms of the Secretarial Procedures. Section 17 of the Secretarial Procedures states: "The terms and conditions of this Compact shall not be modified, amended or otherwise altered except by written agreement of both parties and enactment as set forth in sub-section (a)." Sub-section (a) provides that "This Compact shall be effective upon publication of notice of approval by the Secretary of the Interior of the United States in the Federal Register in accordance with 25 U.S.C. Section 2710(d)(3)(B)."

24. In 1994, pursuant to IGRA, the Secretary also approved a gaming compact for the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe"), a federally recognized Indian tribe ("Mohegan Compact"). Notice of that approval was published in the Federal Register at 59 Fed. Reg. 65,130 (Dec. 16, 1994). The amendment provision in the Mohegan Compact is identical to the amendment provision in the Secretarial Procedures.

25. In or about 2015, the Pequot Tribe and the Mohegan Tribe (collectively, "Tribes") began to consider amending their respective compacts and related Memoranda of Understanding between the Tribes and the State to clarify that the Tribes' operation of a joint venture commercial gaming facility outside of either Tribe's Indian lands would not alter or compromise the Tribes' existing arrangements with the State.

26. On April 12, 2016, the Tribes advised the Department's Office of Indian Gaming that they had formed a joint venture for the purpose of constructing and operating a commercial gaming facility in Connecticut, and asked the Office to review and provide technical assistance to their draft agreements to amend their respective compacts including the Tribal-State Agreement.

27. On April 25, 2016, the Department determined in a letter that the Tribe's April 12, 2016 materials "generally confirms that a proposed State of Connecticut (State) law authorizing a new State-regulated casino would not violate the Tribe's existing exclusivity arrangement if the casino is jointly and exclusively owned by the Tribe and the Mohegan Tribe." The Department did not identify any needed modifications of the Tribal-State Agreement to obtain approval or any additional information that would be required by the Department. The Mohegan Tribe received a materially identical letter from the Department.

28. In light of a 2017 opinion issued by the Connecticut Attorney General, the Tribes sought further technical assistance from the Office of Indian Gaming on April 19, 2017.

29. On May 12, 2017, the Department again issued a letter to the Pequot Tribe which stated that the Department "confirm[s] that the current Administration supports the views expressed in the [April 25, 2016] technical assistance letter." The Department also emphasized that "[t]he proposed State legislation provided to us, could enhance rather than diminish the Tribes' exclusivity rights." *Id.* Again, the Department did not identify any needed modifications of the Tribal-State Agreement to obtain approval or any additional information that may be needed to review and approve. The Mohegan Tribe received a materially identical letter from the Department.

30. Throughout this period from April 2016 through the summer of 2017, the Tribes' representatives had numerous in-person and telephonic meetings with Department officials both in the Obama and Trump Administrations in which the Tribes were assured by Department officials that once they submitted the Mohegan Compact Amendment and the Tribal-State Agreement the Department would approve them.

31. On or about June 27, 2017, the Connecticut General Assembly passed Public Act 17-89, which authorized the Tribes' joint venture to operate a casino in East Windsor Connecticut, subject to certain conditions including amendment of each Tribe's Compacts and associated MOUs.

32. MGM reportedly spent $3.8 million dollars lobbying in Connecticut in 2018 to oppose PA 17-89. *See* Mark Paznoikas, *MGM Spends $3.8 Million Lobbying in Hartford But win in Washington*, Connecticut Mirror (02/02.2018), available at: https://ctmirror.org/2018/02/02/mgm-spends-3-8m-lobbying-in-hartford-but-wins-in-washington/.

33. Relying on the Department's repeated assurances that the Tribal-State Agreement would not violate the existing exclusivity arrangement and would be approved, the Tribe formally submitted the Tribal-State Agreement for approval of the Department, pursuant to IGRA and its implementing regulations, and were both received by the Department on August 2, 2017. At the same time, the Mohegan Tribe submitted to the Department an agreement materially similar to the Tribal-State Agreement. These requests for approval are attached as Exhibit 1.

34. The Tribal-State Agreement was approved and executed by the appropriate authorities of the Pequot Tribe in accordance with the applicable tribal laws. It was also approved and executed by the appropriate authorities of the State of Connecticut under the Constitution and laws of the State of Connecticut. Accordingly, the Tribal-State Agreement as submitted to the Defendants are validly entered into.

35. On or about August 11, 2017, Department officials once again orally notified the Tribes that approval of the Tribal-State Agreement and the Mohegan agreements was forthcoming in the coming days.

36. On or about August 15, 2017, the Tribe met with Associate Deputy Secretary ("ADS") Cason and ADS Cason confirmed that the Department had no issues or questions regarding the Tribal-State Agreement and would approve it along with the amendment to the Mohegan Compact.

37. On or about August 21, 2017, the Tribe re-confirmed with the Department that the Department had no issues or questions regarding the Tribal-State Agreement.

38. On or about September 8, 2017, Department officials advised the Tribes that the Department had prepared draft approval letters.

39. Consistent with the idea that approval was imminent, on September 11, 2017, Troy Woodward, Senior Policy Advisor of Office of Indian Gaming, circulated electronic "draft approval" letters of "the edited letters for Pequot and Mohegan." This September 11, 2017 letter is attached as Exhibit 2.

40. However, despite the Department's repeated affirmations to the Tribe that the Tribal-State Agreement would be approved and widespread acknowledgment among the Department's experts that there was no basis to disapprove the Tribal-State Agreement, the Department ultimately buckled under undue political pressure from both Senator Dean Heller (R-NV) and Representative Mark Amodei (R-NV-02).

41. According to the Center for Responsive Politics, MGM is the single largest contributor since 2005 to Senator Heller. Upon information and belief, Senator Heller has on

numerous occasions attempted to use his political influence to achieve MGM's business objectives.

42. Senator Heller has previously attempted to prevent the Tribes from moving forward with their project. When MGM became aware in 2016 that the Tribe was considering the Tribal-State Agreement, Senator Heller proposed an amendment to a defense bill that would have prevented Indian tribes from operating commercial casinos in the same state where they operate casinos on a reservation. *See* S. 4586, 114th Cong. (2016). The amendment failed.

43. Upon information and belief, Senator Heller directly pressured Secretary Zinke to do what was necessary to stop the Tribes' joint venture casino project during a private dinner at a steakhouse in Las Vegas, Nevada, on or about July 30, 2017.

44. During this same time frame, ADS Cason told the Tribes that members of Congress were starting to pressure the Department to not approve the forthcoming Tribal-State Agreement but he also assured the Tribes that the Department had no intent to reverse course.

45. Upon information and belief, MGM also provides and has consistently provided large contributions to Representative Amodei. Representative Amodei, on MGM's behalf, has opposed the Tribal-State Agreement.

46. Upon information and belief, on or about September 13, 2017, Representative Amodei summoned ADS Cason to his congressional office for a meeting that lasted no less than an hour. Upon information and belief, Representative Amodei pressured the Department to change its position.

47. Upon information and belief, on or about September 14, 2017, Senator Heller called ADS Cason to further pressure the Department to disapprove the Tribal-State Agreement.

48. Following that call, upon information and belief, Secretary Zinke visited the White House to meet with Deputy Chief of Staff Rick Dearborn who, exerting Executive-level pressure, requested the Department to not approve the Tribal-State Agreement.

49. Upon information and belief, Senator Heller made another call to Secretary Zinke on the morning of September 15, 2017—just hours before the Department was set to issue its decision to the Tribe—to provide additional political pressure compelling the Department to withhold approval of the Tribal-State Agreement.

50. In response to the extraordinary political pressure placed on Department officials principally by Senator Heller and Congressman Amodei, the Department abruptly reversed over 17 months of consistent assurances to the Tribes that the Tribal-State Agreement and the Mohegan Compact Amendment would be approved and, instead, sent materially identical letters to the Tribes (hereinafter referred to as the "September 15, 2017 Letters"), in which the Department purported to "return" the Tribal-State Agreement and the Mohegan Compact Amendment to "maintain the status quo" because action was "premature and likely unnecessary."

51. The Department further stated that there was "insufficient information upon which to make a decision," even after repeatedly assuring the Tribe that no additional information was needed.

52. Additionally, the Department expressly carbon copied both Senator Heller and Representative Amodei on the September 15, 2017 Letters. No one else was copied on the September 15, 2017 Letters. The September 15, 2017 Letters are attached as Exhibit 4.

53. Knowing that this unfounded reversal in course and supposed "return" of the Tribal-State Agreement was unsupported by law or fact, Secretary Zinke refused to take calls from the Tribes regarding the Department's decision, which, upon information and belief, he dubbed the "MGM matter."

54. On the same day that the Tribes received the September 15, 2017 Letter, Pequot Chairman Butler sent a letter to the Department stating, *inter alia*, that "[w]e confirmed weeks ago with the Department that the Department required no further information to complete its review of our Compact amendments. There is no justification under the Indian Gaming Regulatory Act for the Department to take any action other than approval of the Compact amendments." This September 15, 2017 Letter is attached as Exhibit 5.

55. In April 2018, the Department's Inspector General confirmed that it was investigating the Department's conduct in handling the Tribes' request to approve the Tribal-State Agreement and the Mohegan Compact Amendment.

56. Additionally, on February 1, 2018, POLITICO published an article chronicling the events leading up to the Department's unexpected decision, including MGM's lobbying efforts and undisclosed meetings between Nevada's congressional representatives and key Department officials, and raised questions as to whether the Department's decision-making process was ultimately tainted by political and private interests. *See* Juliano, Nick. *Zinke's agency held up Indians' casino after MGM lobbying*, POLITICO (Feb. 1, 2018),

*available at* https://www.politico.com/story/2018/02/01/zinkes-indian-casino-interior-312671; *see also* Juliano, Nick. *Interior rejected staff advice when scuttling tribes' casino, documents suggest*, POLITICO (Apr. 20, 2018), *available at* https://www.politico.com/story/2018/04/22/tribes-casino-approval-trump-zinke-494541. Other media outlets have also published similar stories. *See, e.g.*, Greenwood, Max. *Interior Dismissed Experts' Recommendations in Blocking Tribes' Casino: Report*, The Hill (Apr. 22, 2018), *available at* https://www.google.com/amp/s/thehill.com/regulation/lobbying/384340-interior-dismissed-experts-recommendations-in-blocking-tribes-casino%3famp. Rein, Lisa et al., *HUD Appointee, Abruptly Moved to Lead Interior Dept.'s Watchdog Unit Amid Zinke Probe*, The Washington Post (Oct. 16, 2018) (reporting the Secretary met with lobbyists for MGM and overruled recommendation from Department staff, raising questions of improper political influence), *available at* https://www.washingtonpost.com/politics/hud-political-appointee-abruptly-moved-to-lead-interiors-watchdog-office-amid-ongoing-investigations-into-zinke/2018/10/16/30de03b4-d164-11e8-83d6-291feead2ab1_story.html?utm_term=.3e57545f52c3.

57. On June 1, 2018, the Department published notice in the Federal Register that Mohegan's amendments to its Compact and MOU had been deemed approved. 83 Fed. Reg. 25484 (June 1, 2018).

58. The Tribal-State Agreement, despite being materially identical to the agreement between the State and the Mohegan Tribe that was deemed approved, has still not been approved or published in the Federal Register.

## COUNT I

### Defendants' Inaction in Failing Approve the Tribal-State Agreement and Publish Notice of its Approval Was Arbitrary and Capricious

59. The foregoing allegations are re-alleged and incorporated by reference as if restated fully herein.

60. Under the IGRA, Defendants are obligated to approve or disapprove a compact or amendments to a compact if that compact violates the IGRA, any provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or the trust obligations of the United States to Indians. 25 U.S.C. § 2710(d)(8)(B).

61. The Tribal-State Agreement submitted by Plaintiffs did not violate the IGRA, Federal law, or the trust obligations of the United States.

62. Defendants were legally required to either affirmatively approve the Tribal-State Agreement or disapprove of it for one of the articulated reasons.

63. If approved, defendants were also legally required under to publish notice of approval of the Tribal-State Agreement in the Federal Register. 25 U.S.C. § 2710(d)(8)(D).

64. In failing to affirmatively approve Plaintiffs' Tribal-State Agreement, Defendants' inaction was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) because there is no legitimate basis to treat as approved the identical Mohegan Compact and not approve the Tribal-State Agreement. Treating agreements which function identically in the real world differently is the very definition of arbitrary and capricious.

65. In failing to publish notice of approval of the Tribal-State Agreement in the Federal Register, Defendants' inaction was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).

66. Accordingly, Plaintiffs seek a declaratory judgment that the Defendants' failure to approve the Tribal-State Agreement and failure to publish notice of approval was arbitrary and capricious, and not in accordance with law and an order mandating publication of the Tribal-State Agreement as an approved gaming amendment forthwith.

**COUNT II**

**The Department's Failure to Approve the Tribal-State Agreement Was a Result of Undue Political Influence And Accordingly, Arbitrary and Capricious**

67. The foregoing allegations are re-alleged and incorporated by reference as if restated fully herein.

68. Congressional interference by the Nevada delegation and the White House tainted the administrative process.

69. Extraneous facts impermissibly intruded into the calculus of considerations of the decision-makers, which resulted in prejudice to Plaintiffs.

70. Defendants' sudden change in position and "return" of the submitted Tribal-State Agreement was motivated in whole, or in part, by improper and undue political influences, pressures, and considerations that were directed at Defendants' key decision-makers. Absent those improper and undue political influences, pressures, and considerations, Defendants would have approved the Tribal-State Agreement.

71. Because Defendants' "return" of the Tribal-State Agreement was motivated in whole, or in part, by political influence, Defendants' actions were arbitrary, capricious, an abuse of discretion, and not in accordance with law.

72. Plaintiffs seek a declaratory judgment that the Defendants' "return" of the submitted Tribal-State Agreement was agency action or inaction that was arbitrary, capricious, an abuse of discretion, and not in accordance with law, and an order setting aside

the agency action and remanding the action to Defendants with instructions to approve the Tribal-State Agreement and publish it in the Federal Register forthwith.

**COUNT III**

**The Tribal-State Agreement is a "Compact" Under IGRA and Was Deemed Approved by Operation of Law**

73. The foregoing allegations are re-alleged and incorporated by reference as if restated fully herein.

74. Under regulations implementing the IGRA, a compact or tribal-state compact is defined as an "intergovernmental agreement executed between Tribal and State governments under the Indian Gaming Regulatory Act that establishes between the parties the terms and conditions for the operation and regulation of the tribe's Class III gaming activities." 25 C.F.R. § 293.2.

75. Under the mediator selected compact that the Secretary prescribed governing gaming on the Pequot Reservation, the State and Pequot Tribe may modify or amend their compact or procedures only through a written agreement between the parties (the State and the Tribe), and that agreement must be approved and published in the same manner that Tribal-State Compacts are approved under IGRA. Secretarial Procedures at 17.

76. The Tribal-State Agreement is an "intergovernmental agreement" entered into between the Mashantucket Pequot Tribe and the State of Connecticut under IGRA, its implementing regulations, and Section 17 of the Compact. *See id.*

77. The Tribal-State Agreement addresses the modified conditions under which the Tribe may conduct Class III video facsimile games and thereby establishes the "terms and conditions for the operation and regulation of the tribe's Class III gaming activities." *See id.*

78. Accordingly, the Tribal-State Agreement constitutes a tribal-state gaming compact under the IGRA and its implementing regulations. *See id.*; 25 C.F.R. § 502.21.

79. Upon receipt of the Tribal-State Agreement from Plaintiffs, Defendants were required to follow the procedures in the IGRA and the implementing regulations for approving or disapproving a tribal-state gaming compact.

80. Defendants failed to affirmatively approve or disapprove the Tribal-State Agreement from Plaintiffs within the required 45-day period provided by the IGRA.

81. Because the 45-day review period expired on September 16, 2017 with no affirmative approval or disapproval, Plaintiffs' compact is deemed approved by operation of law pursuant to 25 U.S.C. § 2710(d)(8)(C) and 25 C.F.R. § 293.12.

82. Defendants have not treated and, upon information and belief, do not intend to treat, Plaintiffs' compact as deemed approved.

83. Defendants had a clear mandatory, nondiscretionary duty to Plaintiffs to publish a notice of the deemed approval of the compact in the Federal Register within 90 days after receipt of the request for approval, on or before October 31, 2017. Defendants failed to publish within that 90-day period.

84. Defendants' failure to publish notice in the Federal Register that Plaintiffs' compact was deemed approved is agency action "unlawfully withheld." 5 U.S.C. § 706(1).

85. Absent publication in the Federal Register, Plaintiffs have been and will continue to be harmed because the compact, while deemed approved, will not "take effect" under the IGRA. 25 U.S.C. § 2710(d)(3)(B); 25 C.F.R. § 293.15(a).

86. Plaintiffs have no other adequate remedy at law.

87. Accordingly, Plaintiffs request a declaration that their Tribal-State Agreement is a tribal-state gaming compact under governing law which is considered to have been deemed approved, and request an order or writ of mandamus directing Defendants to publish notice of the deemed approval of the Tribal-State Agreement in the Federal Register forthwith.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Declare that the Defendants' inaction in failing to approve or consider approved the Tribal-State Agreement to be arbitrary and capricious;

2. Order a remand to the Department with a mandate to approve the Tribal-State Agreement and directing the Secretary to publish forthwith notice of approval of the Tribal-State Agreement in the Federal Register;

3. Issue an order or writ compelling the Secretary to immediately publish notice of approval of the Tribal-State Agreement in the Federal Register;

4. Declare that the Tribal-State Agreement is a "Compact" as defined by governing IGRA-related regulations and, accordingly, the Tribal-State Agreement was "deemed approved" by operation of law;

5. Retain jurisdiction until the Defendants have completed their court-ordered obligations; and

6. Grant Plaintiffs such further and additional relief as the Court may determine is just and proper.

Dated: October 17, 2018

Respectfully submitted,

KILPATRICK TOWNSEND &
STOCKTON LLP

/s/ Keith M. Harper
Keith M. Harper, Bar No. 451956
KHarper@kilpatricktownsend.com
Catherine F. Munson, Bar No. 985717
cmunson@kilpatricktownsend.com
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-508-5800
Facsimile: 202-508-5858

*Attorneys for Plaintiff*
*Mashantucket Pequot Tribe*

STATE OF CONNECTICUT

/s/ Mark. F. Kohler
Mark F. Kohler
Assistant Attorney General
Mark.Kohler@ct.gov
Michael K. Skold
Assistant Attorney General
Michael.Skold@ct.gov
Connecticut Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Telephone: 860-808-5020
Facsimile: 860-808-5347

*Attorneys for Plaintiff*
*The State of Connecticut*

# Exhibit 01

THE MOHEGAN TRIBE
MUNDU WIGO

COPY

RECEIVED
AUG - 2 2017
AS - IA
Office of Indian Gaming

*Via Hand Delivered*

July 31, 2017

Paula Hart, Director
Office of Indian Gaming
U.S. Department of the Interior
1849 C Street, N.W.
Mail Stop 2657, Main Interior Building
Washington, DC 20240

**RE: Mohegan Tribe of Indians of Connecticut and State of Connecticut Tribal-State Compact Amendments**

Dear Director Hart:

Enclosed is an agreement to amend Sections 2, 15(a), and 17(d) of the Tribal-State Compact entered into between The Mohegan Tribe of Indians of Connecticut (the "Tribe") and the State of Connecticut (the "State"). Pursuant to 25 C.F.R. 293.8, I have also enclosed:

(1) a copy of Resolution No. 2017-36, whereby the Tribe approved the amendments in accordance with applicable Tribal law; and

(2) a copy of the House and Senate resolutions, whereby the State General Assembly approved the amendments as entered into by the Governor of the State.

Further, enclosed is a Memorandum of Understanding between the Tribe and the State amending similar provisions in the Memorandum of Understanding entered into between the Tribe and the State on May 17, 1994.

By this letter, I request that the Secretary approve the compact amendments in accordance with the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*

THE MOHEGAN TRIBE

13 Crow Hill Road • Uncasville, CT 06382 • Telephone (860) 862-6100

Thank you for your prompt consideration of this request. Should you have any questions, please do not hesitate to contact Helga Woods, Attorney General for the Tribe, at (860) 862-6897.

Very truly yours,

Kevin P. Brown, "Red Eagle"
Chairman

Enc.
cc: Hon. Dannel Malloy, Governor, State of Connecticut

AGREEMENT
BETWEEN
THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT
AND
THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") entered into a Tribal-State Compact (the "Compact") on May 17, 1994 pursuant to the provisions of the Indian Gaming Regulatory Act, Pub. L. 100-497, 25 U.S.C. §§ 2701 et seq. (the "Act"); and

The State and the Mohegan Tribe wish to confirm by this Agreement ("Agreement") that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe and the Mashantucket Pequot Tribal Nation (the "Mashantucket Pequot Tribe" and, together with the Mohegan Tribe, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Mohegan Tribe or the State under the Compact or any benefits derived by any party therefrom.

1. The Mohegan Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance for any purpose by a business entity jointly and exclusively owned by the Tribes shall not terminate the moratorium established under Section 15(a) of the Compact. Accordingly, the parties agree to modify the first sentence of Section 15(a) of the Compact to read:

> Notwithstanding the provisions of section 3(a)(ix), the Tribe shall have no authority under this Compact to conduct Class III video facsimile games as defined pursuant to section 3(a)(ix) unless and until either: (i) it is determined by agreement between the Tribe and the State, or by a court of competent jurisdiction, that by virtue of the existing laws and regulations of the State the operation of video facsimiles of games of chance would not be unlawful on the ground that the Tribe is not located in a State that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. § 2710(d)(1)(B) (it being understood and agreed that there is a present controversy between the Tribe and the State in which the Tribe takes the position that such gaming is permitted under the existing laws of the State and the State takes the position that such gaming is not permitted under the existing laws of the State), provided that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe to operate video facsimiles of games of chance shall not be deemed a law that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. § 2710(d)(1)(B); or (ii) the existing laws or regulations of the State are amended to expressly authorize the operation of any video games of chance for any purpose by any person, organization or entity other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe.

2. The Mohegan Tribe and the State hereby agree to modify Section 17(d) of the Compact to read:

> Nothing in this Compact shall be deemed to waive the right of the Tribe to request negotiations for a tribal-state compact with respect to a Class III gaming activity which is to be conducted on the Reservation but is not permitted under the provisions of this Compact, including forms of Class III gaming which were not permitted by the State for any purpose by any person, organization, or entity, other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe, at the time when this Compact was negotiated but are subsequently so permitted by the State, in accordance with 25 U.S.C. § 2710(d)(3)(A); provided, however, that this sub-section shall not be deemed to authorize the Tribe to initiate a new request for negotiations regarding the terms of this Compact applicable to forms of gaming authorized by section 3(a) of this Compact, except to the extent that existing state law relating to such forms of gaming are changed, other than a change in state law permitting a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe to engage in such gaming, or to the extent that the State voluntarily consents to such negotiations.

3. The Mohegan Tribe and the State agree to amend Section 2 of the Compact by adding the following subsection (dd):

> (dd) "Business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe" means an entity owned exclusively by the Tribe and the Mashantucket Pequot Tribe in which the Tribe and the Mashantucket Pequot Tribe each maintain an equity ownership interest of not less than twenty-five (25) percent and includes any gaming services licensee engaged by such entity for the purpose of, and only to the extent such licensee is, operating video facsimile games of chance on such entity's behalf.

4. The Mohegan Tribe hereby waives any defense that it may have by virtue of its sovereign immunity to enable the State to enforce, in the United States District Courts, without the need to exhaust tribal remedies, the provisions of this Agreement and to enforce, in the United States District Courts, any award of injunctive relief or damages resulting therefrom, and the Mohegan Tribe further consents to the exercise of jurisdiction over such action and over the Mohegan Tribe by the United States District Courts with respect to such actions.

5. This Agreement shall become effective upon the occurrence of all of the following:

a. The Mashantucket Pequot Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mashantucket Agreement");

b. The Mohegan Tribe has adopted a tribal council resolution authorizing the execution of this Agreement and the amendments to the Compact therein, including the waiver of sovereign immunity set forth in paragraph 4;

c. The General Assembly of the State has approved this Agreement and the Mashantucket Pequot Agreement pursuant to C.G.S. Section 3-6c; and

d. This Agreement and the Mashantucket Pequot Agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations and notice thereof is published in the Federal Register.

6. Except as modified by this Agreement, the Compact remains in full force and effect.

| STATE OF CONNECTICUT | MOHEGAN TRIBE OF INDIANS OF CONNECTICUT |
|---|---|
| By: [signature] | By: [signature] |
| Name: Dannel P. Malloy | Name: Kevin P. Brown |
| Title: Governor of Connecticut | Title: Chairman |
| Date: July 20, 2017 | Date: July 20, 2017 |

MEMORANDUM OF UNDERSTANDING
BETWEEN
THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT
AND
THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") entered into a Memorandum of Understanding (the "MOU") on May 17, 1994, to set forth certain matters regarding implementation of the Mohegan Gaming Compact (the "Compact") and the Agreement resolving the Tribe's land claim against the State; and

The State and the Mohegan Tribe wish to confirm that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe and the Mashantucket Pequot Tribal Nation (the "Mashantucket Pequot Tribe" and, together with the Mohegan Tribe, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Mohegan Tribe or the State under the MOU or any benefits derived by any party therefrom.

1. The Mohegan Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance or other commercial casino games for any purpose by a business entity jointly and exclusively owned by the Tribes shall not affect the parties' rights and obligations under the MOU, including the Mohegan Tribe's obligation to contribute a percentage of the gross operating revenues of video facsimile games to the State as provided in the MOU. Accordingly, the parties agree to amend Paragraph 1 of the MOU to read:

> In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Compact on the operation of electronic lottery devices and other video facsimiles (as defined in the Compact), the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Compact on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Compact, subject to the requirements of section 7(c) of the Compact and the Technical Standards for Video Facsimile Games as set forth in section 31 of Appendix A of the Compact. The Tribe agrees that, so

long as no change in State law is enacted to permit the operating of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe, the Tribe will contribute to the State a sum (the "Contribution") equal to twenty five percent (25%) of gross operating revenues of video facsimile games operated by the Tribe less those reductions set forth in paragraphs (2) and (3) hereof. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimiles and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Compact. Upon any failure by the Tribe to satisfy its obligations to the State hereunder, this Agreement shall cease to be of any force or effect and the moratorium established pursuant to section 15(a) of the Compact shall without any requirement for further action by either party be in full force and effect in accordance with its terms.

2. The parties hereby agree to amend Paragraph 7 of the MOU to read:

It is understood and agreed by the parties that this agreement constitutes an accommodation by both the State and the Tribe in order to satisfy their respective interests and to resolve the matters addressed by section 15(a) of the Compact in an orderly and non-adversarial manner, and does not constitute an admission or concession by either the State or the Tribe as to any legal or factual question which may otherwise arise pursuant to section 15(a) of the Compact. The Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe and no ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not assert the right to operate video facsimile games except in accordance with this Memorandum of Understanding. In the event that any change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe or any ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimiles by virtue of this Memorandum of Understanding, but the Tribe may thereupon assert any rights which it may otherwise have under the Compact; provided, however, that in such event neither party shall be bound by any of the provisions hereof nor shall either

party be barred from taking any position inconsistent with this Memorandum of Understanding; and further provided, that in the event that the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games under the provisions of the Indian Gaming Regulatory Act, the Tribe shall not thereby be relieved of its obligations hereunder but shall continue to be bound by the provisions of paragraphs (1) through (5) of this Memorandum of Understanding so long as the Mashantucket Pequot Tribe makes a contribution to the State with respect to its operation of video facsimile games which is at least equivalent to that required pursuant to this Memorandum of Understanding. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the Compact or the effect of any provision of the Compact or of any State or Federal law or regulation.

3. The Mohegan Tribe and the State agree to add the following as a new Paragraph 8 to the MOU:

8. For purposes of this Memorandum of Understanding, "business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe" means an entity owned exclusively by the Tribe and the Mashantucket Pequot Tribe in which the Tribe and the Mashantucket Pequot Tribe each maintain an equity ownership interest of not less than twenty-five (25) percent and includes any gaming services licensee engaged by such entity for the purpose of, and only to the extent such licensee is, operating video facsimiles or other commercial casino games on such entity's behalf.

4. The Tribe and the State agree that the amendments to the MOU shall only be effective if:

a. The Mashantucket Pequot Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mashantucket Pequot Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution of this agreement and the amendments to the MOU herein;

c. The General Assembly of the State has approved this agreement to amend the MOU and the Mashantucket Pequot Agreement under C.G.S. Section 3-6c; and

d. The Mashantucket Pequot Agreement and this agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations.

5. Except as modified by this agreement, the MOU remains in full force and effect.

STATE OF CONNECTICUT

By: [signature]

Name: Dannel P. Malloy

Title: Governor of Connecticut

Date: July 20, 2017

MOHEGAN TRIBE OF INDIANS OF CONNECTICUT

By: [signature]

Name: KEVIN P. BROWN

Title: CHAIRMAN

Date: JULY 20, 2017

**THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT**
**Resolution No. 2017-36**

***Approval of Amendments to the Compact and Memorandum of Understanding re: Commercial Casino Gaming Facility under State Law***

**WHEREAS**, the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") is an American Indian Tribe recognized by the government of the United States pursuant to the provisions of Title 25 of the Code of Federal Regulations, Part 83; and

**WHEREAS**, pursuant to Article IX, Section 2 of the Mohegan Tribe Constitution (the "Constitution"), the Mohegan Tribal Council ("Tribal Council") has the authority to exercise all executive and legislative powers reasonable and necessary to achieve the tribal goals set forth in the Constitution, including to promote the general welfare of the Mohegan Tribe; and

**WHEREAS**, the Tribal Council is vested with the authority to establish and enforce all ordinances providing for the maintenance of law, order and the administration of justice within the Mohegan Indian Reservation pursuant to Article IX, Section 2(n) of the Constitution and to establish procedures for the conduct of all tribal government and business operations pursuant to Article IX, Section 2(c) of the Constitution; and

**WHEREAS**, pursuant to Article IX, Section 2(a) of the Constitution, the Tribal Council is authorized to approve contracts or agreements with tribal, foreign, federal, state or local governments, with private persons or with corporate bodies; and

**WHEREAS**, on May 17, 1994 the Mohegan Tribe and the State of Connecticut (the "State") entered into a Tribal-State Compact (the "Compact") pursuant to the Indian Gaming Regulatory Act and a Memorandum of Understanding ("MOU") to set forth certain matters regarding implementation of the Compact; and

**WHEREAS,** the Mohegan Tribe desires to enter into certain agreements with the State (the "Amendments") to confirm that the enactment of State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe and the Mashantucket Pequot Tribal Nation to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Mohegan Tribe or the State under the Compact or the MOU or any benefits derived by any party therefrom and, accordingly, to amend certain provisions of the Compact and the MOU; and

**WHEREAS,** the Tribal Council, with the assistance of its staff and the Office of Legal Counsel, has reviewed the Amendments, which Amendments shall be substantially in the form attached hereto as Exhibit A, and desires to approve same.

**NOW, THEREFORE**, be it resolved that the Tribal Council, on behalf of the Mohegan Tribe, does hereby approve the Amendments, substantially in the form attached hereto as Exhibit A; and it is

**FURTHER RESOLVED**, that either Kevin P. Brown as Chairman or R. James Gessner, Jr. as Vice-Chairman of the Tribal Council be and hereby is authorized to execute and deliver the Amendments on behalf of the Mohegan Tribe; and it is

**FURTHER RESOLVED**, that any officer of the Tribal Council be and hereby is authorized to execute and deliver all other documents which may be necessary or appropriate in connection therewith, and to do and perform all other acts and things necessary, convenient or proper to carry out the foregoing.

Dated this 7th day of June, 2017, at Uncasville, Connecticut.

THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT

By: [signature]
Kevin P. Brown, Chairman

ATTEST:

[signature: Cheryl Todd]
Cheryl A. Todd, Recording Secretary

EXHIBIT A

[Attached – Amendments]

AGREEMENT

BETWEEN

THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT

AND

THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") entered into a Tribal-State Compact (the "Compact") on May 17, 1994 pursuant to the provisions of the Indian Gaming Regulatory Act, Pub. L. 100-497, 25 U.S.C. §§ 2701 et seq. (the "Act"); and

The State and the Mohegan Tribe wish to confirm by this Agreement ("Agreement") that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe and the Mashantucket Pequot Tribal Nation (the "Mashantucket Pequot Tribe" and, together with the Mohegan Tribe, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Mohegan Tribe or the State under the Compact or any benefits derived by any party therefrom.

1. The Mohegan Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance for any purpose by a business entity jointly and exclusively owned by the Tribes shall not terminate the moratorium established under Section 15(a) of the Compact. Accordingly, the parties agree to modify the first sentence of Section 15(a) of the Compact to read:

> Notwithstanding the provisions of section 3(a)(ix), the Tribe shall have no authority under this Compact to conduct Class III video facsimile games as defined pursuant to section 3(a)(ix) unless and until either: (i) it is determined by agreement between the Tribe and the State, or by a court of competent jurisdiction, that by virtue of the existing laws and regulations of the State the operation of video facsimiles of games of chance would not be unlawful on the ground that the Tribe is not located in a State that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. § 2710(d)(1)(B) (it being understood and agreed that there is a present controversy between the Tribe and the State in which the Tribe takes the position that such gaming is permitted under the existing laws of the State and the State takes the position that such gaming is not permitted under the existing laws of the State), provided that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe to operate video facsimiles of games of chance shall not be deemed a law that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. § 2710(d)(1)(B); or (ii) the existing laws or regulations of the State are amended to expressly authorize the operation of any video games of chance for any purpose by any person, organization or entity other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe.

2. The Mohegan Tribe and the State hereby agree to modify Section 17(d) of the Compact to read:

> Nothing in this Compact shall be deemed to waive the right of the Tribe to request negotiations for a tribal-state compact with respect to a Class III gaming activity which is to be conducted on the Reservation but is not permitted under the provisions of this Compact, including forms of Class III gaming which were not permitted by the State for any purpose by any person, organization, or entity, <u>other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe,</u> at the time when this Compact was negotiated but are subsequently so permitted by the State, in accordance with 25 U.S.C. § 2710(d)(3)(A); provided, however, that this sub-section shall not be deemed to authorize the Tribe to initiate a new request for negotiations regarding the terms of this Compact applicable to forms of gaming authorized by section 3(a) of this Compact, except to the extent that existing state law relating to such forms of gaming are changed, <u>other than a change in state law permitting a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe to engage in such gaming,</u> or to the extent that the State voluntarily consents to such negotiations.

3. The Mohegan Tribe and the State agree to amend Section 2 of the Compact by adding the following subsection (dd):

> <u>(dd) "Business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe" means an entity owned exclusively by the Tribe and the Mashantucket Pequot Tribe in which the Tribe and the Mashantucket Pequot Tribe each maintain an equity ownership interest of not less than twenty-five (25) percent.</u>

4. The Mohegan Tribe hereby waives any defense that it may have by virtue of its sovereign immunity to enable the State to enforce, in the United States District Courts, without the need to exhaust tribal remedies, the provisions of this Agreement and to enforce, in the United States District Courts, any award of injunctive relief or damages resulting therefrom, and the Mohegan Tribe further consents to the exercise of jurisdiction over such action and over the Mohegan Tribe by the United States District Courts with respect to such actions.

5. This Agreement shall become effective upon the occurrence of all of the following:

a. The Mashantucket Pequot Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mashantucket Agreement");

b. The Mohegan Tribe has adopted a tribal council resolution authorizing the execution of this Agreement and the amendments to the Compact therein, including the waiver of sovereign immunity set forth in paragraph 4;

c. The General Assembly of the State has approved this Agreement and the Mashantucket Pequot Agreement pursuant to C.G.S. Section 3-6c; and

d. This Agreement and the Mashantucket Pequot Agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations and notice thereof is published in the Federal Register.

6. Except as modified by this Agreement, the Compact remains in full force and effect.

| STATE OF CONNECTICUT | MOHEGAN TRIBE OF INDIANS OF CONNECTICUT |
|---|---|
| By:____________________________ | By:____________________________ |
| Name:_________________________ | Name:_________________________ |
| Title:__________________________ | Title:__________________________ |
| Date:__________________________ | Date:__________________________ |

MEMORANDUM OF UNDERSTANDING
BETWEEN
THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT
AND
THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") entered into a Memorandum of Understanding (the "MOU") on May 17, 1994, to set forth certain matters regarding implementation of the Mohegan Gaming Compact (the "Compact") and the Agreement resolving the Tribe's land claim against the State; and

The State and the Mohegan Tribe wish to confirm that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe and the Mashantucket Pequot Tribal Nation (the "Mashantucket Pequot Tribe" and, together with the Mohegan Tribe, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Mohegan Tribe or the State under the MOU or any benefits derived by any party therefrom.

1. The Mohegan Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance or other commercial casino games for any purpose by a business entity jointly and exclusively owned by the Tribes shall not affect the parties' rights and obligations under the MOU, including the Mohegan Tribe's obligation to contribute a percentage of the gross operating revenues of video facsimile games to the State as provided in the MOU. Accordingly, the parties agree to amend Paragraph 1 of the MOU to read:

> In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Compact on the operation of electronic lottery devices and other video facsimiles (as defined in the Compact), the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Compact on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Compact, subject to the requirements of section 7(c) of the Compact and the Technical Standards for Video Facsimile Games as

set forth in section 31 of Appendix A of the Compact. The Tribe agrees that, so long as no change in State law is enacted to permit the operating of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe, the Tribe will contribute to the State a sum (the "Contribution") equal to twenty five percent (25%) of gross operating revenues of video facsimile games operated by the Tribe less those reductions set forth in paragraphs (2) and (3) hereof. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimiles and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Compact. Upon any failure by the Tribe to satisfy its obligations to the State hereunder, this Agreement shall cease to be of any force or effect and the moratorium established pursuant to section 15(a) of the Compact shall without any requirement for further action by either party be in full force and effect in accordance with its terms.

2. The parties hereby agree to amend Paragraph 7 of the MOU to read:

It is understood and agreed by the parties that this agreement constitutes an accommodation by both the State and the Tribe in order to satisfy their respective interests and to resolve the matters addressed by section 15(a) of the Compact in an orderly and non-adversarial manner, and does not constitute an admission or concession by either the State or the Tribe as to any legal or factual question which may otherwise arise pursuant to section 15(a) of the Compact. The Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe and no ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not assert the right to operate video facsimile games except in accordance with this Memorandum of Understanding. In the event that any change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe or any ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimiles by virtue of this Memorandum of Understanding, but the Tribe may thereupon assert any rights which it may otherwise have under the Compact; provided, however, that in such event neither party shall be bound by any of the provisions

hereof nor shall either party be barred from taking any position inconsistent with this Memorandum of Understanding; and further provided, that in the event that the Mashantucket Pequot Tribe lawfully operates video facsimile games or other commercial casino games under the provisions of the Indian Gaming Regulatory Act, the Tribe shall not thereby be relieved of its obligations hereunder but shall continue to be bound by the provisions of paragraphs (1) through (5) of this Memorandum of Understanding so long as the Mashantucket Pequot Tribe makes a contribution to the State with respect to its operation of video facsimile games which is at least equivalent to that required pursuant to this Memorandum of Understanding. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the Compact or the effect of any provision of the Compact or of any State or Federal law or regulation.

3. The Mohegan Tribe and the State agree to add the following as a new Paragraph 8 to the MOU:

8. For purposes of this Memorandum of Understanding, "business entity jointly and exclusively owned by the Tribe and the Mashantucket Pequot Tribe" means an entity owned exclusively by the Tribe and the Mashantucket Pequot Tribe in which the Tribe and the Mashantucket Pequot Tribe each maintain an equity ownership interest of not less than twenty-five (25) percent.

4. The Tribe and the State agree that the amendments to the MOU shall only be effective if:

a. The Mashantucket Pequot Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mashantucket Pequot Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution of this agreement and the amendments to the MOU herein;

c. The General Assembly of the State has approved this agreement to amend the MOU and the Mashantucket Pequot Agreement under C.G.S. Section 3-6c; and

d. The Mashantucket Pequot Agreement and this agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations.

5. Except as modified by this agreement, the MOU remains in full force and effect.

STATE OF CONNECTICUT

By:____________________________

Name:__________________________

Title:___________________________

Date:___________________________

MOHEGAN TRIBE OF INDIANS OF CONNECTICUT

By:____________________________

Name:__________________________

Title:___________________________

Date:___________________________

DENISE W. MERRILL
SECRETARY OF THE STATE
CONNECTICUT

August 1, 2017

Chairman Kevin Brown
The Mohegan Tribe
13 Crow Hill Road
Uncasville, CT 06382

Chairman Rodney Butler
Mashantucket Pequot Tribal Nation
2 Matts Path
PO Box 3060
Mashantucket, CT 06338

Dear Chairman Brown and Chairman Butler,

Enclosed you will find a copy of Connecticut General Assembly's 2016-2017 House Joint Resolution 301 which passed the State House of Representatives on 7/24/17, the State Senate on 7/31/17 and received by my office on 8/1/17. Please do not hesitate to contact my office with any questions.

Sincerely,

Denise W. Merrill

Denise W. Merrill

State Capitol, 210 Capitol Avenue, Hartford, CT 06106 • Tel. (860) 509-6200 • Fax (860) 509-6209

EMERGENCY CERTIFICATION

SC ______ HC ______ FILE NO. ______

HOUSE JT. RES. NO. 301

RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT.

STATE OF CONNECTICUT
HOUSE OF REPRESENTATIVES

JUL 24 2017

ADOPTED

Frederick J. Jortner

STATE OF CONNECTICUT
SENATE

JUL 31 2017

ADOPTED

George Abramson

IN CONCURRANCE

LCO NO. 9217

INTRODUCED BY:

REP. ARESIMOWICZ, 30th Dist.
SEN. LOONEY, 11th Dist.

adopted

STATE OF CONNECTICUT
HOUSE OF REPRESENTATIVES

Marton M. Lesnewsky 1st

JUL 24 2017

BT

+ TRANS.
TO SENATE ☒
TO GOVERNOR ☐

Frederick J. Jortner

**EMERGENCY CERTIFICATION**

(To Bring Out)

As provided in Section 2-26 of the Connecticut General Statutes and Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, we, **JOE ARESIMOWICZ**, Speaker of the House of Representatives, and **MARTIN M. LOONEY**, President Pro Tempore of the Senate, hereby certify that a certain bill/resolution namely:

~~Bill~~ HJR No. 301 entitled:

***RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT***

necessitates action by the General Assembly for the following reasons:

in accordance with Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, to enact legislation needed to implement the state budget for the biennium beginning July 1, 2017.

Dated at Hartford, Connecticut this 24th day of July, 2017.

**JOE ARESIMOWICZ**,
Speaker of the House of Representatives

Martin M. Looney

**MARTIN M. LOONEY**,
President Pro Tempore of the Senate

# EMERGENCY CERTIFICATION

(To Raise)

As provided in Section 2-26 of the Connecticut General Statutes and Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, we, **JOE ARESIMOWICZ**, Speaker of the House of Representatives, and **MARTIN M. LOONEY**, President Pro Tempore of the Senate, hereby certify that a certain bill/resolution namely:

~~Bill~~ HSR No. 301 entitled:

***RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT***

necessitates action by the General Assembly for the following reasons:

in accordance with Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, to enact legislation needed to implement the state budget for the biennium beginning July 1, 2017.

Dated at Hartford, Connecticut this 24th day of July, 2017.

**JOE ARESIMOWICZ**,
Speaker of the House of Representatives

Martin M. Looney

**MARTIN M. LOONEY**,
President Pro Tempore of the Senate

STATE OF CONNECTICUT

QUI TRANSTULIT SUSTINET

General Assembly

EMERGENCY CERTIFICATION

***House Joint Resolution No.*** 301

***June Special Session, 2017***

LCO No. **9217**

*09217*

Referred to Committee on

Introduced by:
REP. ARESIMOWICZ, 30th Dist.
SEN. LOONEY, 11th Dist.

## *RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT.*

Resolved by this Assembly:

WHEREAS, on July 20, 2017, the Governor executed amendments to the Final Mashantucket Pequot Gaming Procedures and the corresponding Memorandum of Understanding between the State of Connecticut and the Mashantucket Pequot Tribe and on said date the Governor also executed amendments to the Tribal-State Compact and the corresponding Memorandum of Understanding between the State of Connecticut and the Mohegan Tribe of Indians of Connecticut; and

WHEREAS, such amendments will authorize said tribes to jointly operate a gaming facility in East Windsor, Connecticut pursuant to public act 17-89; and

WHEREAS, such amendments were submitted to the General Assembly for approval pursuant to section 3-6c of the general statutes.

NOW, THEREFORE, BE IT RESOLVED, that such amendments are approved.

BE IT FURTHER RESOLVED, that the clerks of the House of Representatives and the Senate cause a copy of this resolution to be sent to the Governor.

Mashantucket Pequot Tribal Nation

TRIBAL COUNCIL

COPY

RECEIVED
AUG - 2 2017
AS - IA
Office of Indian Gaming

*Via Hand Delivered*

August 1, 2017

Paula Hart, Director
Office of Indian Gaming
U.S. Department of the Interior
1849 C Street, N.W.
Mail Stop 2657, Main Interior Building
Washington, DC 20240

**Re: Mashantucket Pequot Tribe**

Dear Director Hart:

Enclosed is an original agreement to amend Sections 2, 15(a), and 17(d) of the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991), executed by the Mashantucket Pequot Tribe (the "Tribe") and the State of Connecticut (the "State"). Pursuant to 25 C.F.R. 293.8, I have also enclosed:

(1) a copy of TCR060817-02 of 06, whereby the Mashantucket Pequot Tribal Council, the governing body of the Tribe, approved the amendments in accordance with applicable Tribal law; and

(2) a copy of the House and Senate Resolutions whereby the Connecticut General Assembly approved the amendments, pursuant to applicable state law, as entered into by the Governor of the State.

Further, enclosed is a copy of a Memorandum of Understanding between the Tribe and the State, amending similar provisions in the Memorandum of Understanding entered into between the Tribe and the State on January 13, 1993, as amended on April 30, 1993 and April 25, 1994.

By this letter, I request that the Secretary approve the amendments in accordance with the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*

Thank you for your prompt consideration of this request. Should you have any questions, please do not hesitate to contact Betsy Conway, General Counsel for the Tribe at (860) 396-2099.

Very truly yours,

Rodney Butler
Chairman

Encl.

cc: Hon. Dannel Malloy, Governor, State of Connecticut

# AGREEMENT
# BETWEEN
# THE MASHANTUCKET PEQUOT TRIBE
# AND
# THE STATE OF CONNECTICUT

The Mashantucket Pequot Tribe (the "Tribe") is the owner and operator of a gaming facility on the Mashantucket Pequot Reservation pursuant to the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991) (the "Procedures") and the provisions of the Indian Gaming Regulatory Act, Pub. L. 100-497, 25 U.S.C. §§ 2701 et seq.

The State and the Tribe wish to confirm by this Agreement ("Agreement") that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") and the Tribe (together the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Tribe under the Procedures or any benefits derived by any party therefrom.

1. The Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance for any purpose by a business entity jointly and exclusively owned by the Tribes shall not terminate the moratorium established under Section 15(a) of the Procedures. Accordingly, the parties agree to modify the first sentence of Section 15(a) of the Procedures to read:

> Notwithstanding the provisions of section 3(a)(ix), the Tribe shall have no authority under this Compact to conduct Class III video facsimile games as defined pursuant to section 3(a)(ix) unless and until either: (i) it is determined by agreement between the Tribe and the State, or by a court of competent jurisdiction, that by virtue of the existing laws and regulations of the State the operation of video facsimiles of games of chance would not be unlawful on the ground that the Tribe is not located in a State that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. §2710(d)(1)(B) (it being understood and agreed that there is a present controversy between the Tribe and the State in which the Tribe takes the position that such gaming is permitted under the existing laws of the State and the State takes the position that such gaming is not permitted under the existing laws of the State), provided that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut to operate video facsimiles of games of chance shall not be deemed a law that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. §2710(d)(1)(B); or (ii) the existing laws or regulations of the State are amended to expressly authorize the operation of any video games of chance for any purpose by any person, organization or entity other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut.

2. The Tribe and the State hereby agree to modify Section 17(d) of the Procedures to read:

> Nothing in this Compact shall be deemed to waive the right of the Tribe to request negotiations for a tribal-state compact with respect to a Class III gaming activity which is to be conducted on the Reservation but is not permitted under the provisions of this Compact, including forms of Class III gaming which were not permitted by the State for any purpose by any person, organization, or entity, other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut, at the time when this Compact was negotiated but are subsequently so permitted by the State, in accordance with 25 U.S.C. §2710(d)(3)(A); provided, however, that this sub-section shall not be deemed to authorize the Tribe to initiate a new request for negotiations regarding the terms of this Compact applicable to forms of gaming authorized by section 3(a) of this Compact, except to the extent that existing state law relating to such forms of gaming are changed, other than a change in State law permitting a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut to engage in such gaming, or to the extent that the State voluntarily consents to such negotiations.

3. The Tribe and the State agree to amend Section 2 of the Procedures by adding the following subsection (dd):

> (dd) "Business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut" means an entity owned exclusively by the Tribe and the Mohegan Tribe of Indians of Connecticut in which the Tribe and the Mohegan Tribe of Indians of Connecticut each maintain an equity ownership interest of not less than twenty-five (25) percent and includes any gaming services licensee engaged by such entity for the purpose of, and only to the extent such licensee is, operating video facsimile games of chance on such entity's behalf.

4. The Tribe hereby waives any defense that it may have by virtue of its sovereign immunity to enable the State to enforce, in the United States District Courts, without the need to exhaust tribal remedies, the provisions of this Agreement and to enforce, in the United States District Courts, any award of injunctive relief or damages resulting therefrom, and the Tribe further consents to the exercise of jurisdiction over such action and over the Tribe by the United States District Courts with respect to such actions.

5. This Agreement shall become effective upon the occurrence of all of the following:

a. The Mohegan Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mohegan Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution

of this Agreement and the amendments to the Procedures therein, including the waiver of sovereign immunity set forth in paragraph 4.

c. The General Assembly of the State has approved this Agreement and the Mohegan Agreement pursuant to C.G.S. Section 3-6c; and

d. This Agreement and the Mohegan Agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations and notice thereof is published in the Federal Register.

6. Except as modified by this Agreement, the Procedures remain in full force and effect.

STATE OF CONNECTICUT

By: [signature]

Name: Dannel P. Malloy

Title: Governor of Connecticut

Date: July 20, 2017

MASHANTUCKET PEQUOT TRIBE

By: [signature]

Name: Rodney Butler

Title: Chairman

Date: 7/20/17

MEMORANDUM OF UNDERSTANDING
BETWEEN
THE MASHANTUCKET PEQUOT TRIBE
AND
THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mashantucket Pequot Tribe (the "Tribe") entered into a Memorandum of Understanding on January 13, 1993, as amended on April 30, 1993 and April 25, 1994 (the "MOU"), to set forth certain matters regarding implementation of the final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991) (the "Procedures"); and

The State and the Tribe wish to confirm that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") and the Mashantucket Pequot Tribe (together, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Tribe or the State under the MOU or any benefits derived by any party therefrom.

1. The Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance or other commercial casino games for any purpose by a business entity jointly and exclusively owned by the Tribes shall not affect the parties' rights and obligations under the MOU, including the Tribe's obligation to contribute a percentage of the gross operating revenues of video facsimile games to the State as provided in the MOU. Accordingly, the parties agree to amend Paragraph 1 of the MOU to read:

> In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Procedures on the operation of electronic lottery devices and other video facsimiles (as defined in the Procedures), the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Procedures on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Procedures, subject to the requirements of section 7(c) of the Procedures and the Technical Standards for Video Facsimile Games as set forth in section 31 of Appendix A of the Procedures. The Tribe agrees that, so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe

and no ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe lawfully operates video facsimiles or other commercial casino games, the Tribe will contribute to the State a sum (the "Contribution") equal to twenty five percent (25%) of gross operating revenues of video facsimile games operated by the Tribe. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State, including any Minimum Contribution paid by the Tribe pursuant to paragraph (2) below. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimile devices and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Procedures. Upon any failure by the Tribe to satisfy its obligations to the State hereunder, this Memorandum of Agreement shall cease to be of any force or effect and the moratorium established pursuant to section 15(a) of the Procedures shall without any requirement for further action by either party be in full force and effect in accordance with its terms.

2. The parties hereby agree to amend Paragraph 3 of the MOU to read:

It is understood and agreed by the parties that this agreement constitutes an accommodation by both the State and the Tribe in order to satisfy their respective interests and to resolve the matters addressed by section 15(a) of the Procedures in an orderly and non-adversarial manner, and does not constitute an admission or concession by either the State or the Tribe as to any legal or factual questions which might otherwise arise pursuant to section 15(a) of the Procedures. The Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe and no ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not assert the right to operate video facsimile games except in accordance with this Memorandum of Understanding. In the event that any change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe or any ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimile games by virtue of this Memorandum of Understanding, but the Tribe may thereupon assert any rights which it may otherwise have under the Procedures; provided, however, that in such event neither party shall be bound by any of the provisions hereof nor shall either party be barred from taking any position inconsistent with this Memorandum of Understanding; and further

provided, that in the event that the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games under the provisions of the Indian Gaming Regulatory Act, the Tribe shall not thereby be relieved of its obligations hereunder but shall, subject to the provisions of paragraph (4) hereof, continue to be bound by the provisions of this Memorandum of Understanding so long as the Mohegan Tribe makes a contribution to the State with respect to its operation of video facsimile games which is at least equivalent to that required pursuant to the Memorandum of Understanding of even date entered into between the Mohegan Tribe and the State as appended hereto as an Exhibit. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the Procedures or the effect of any provision of the Procedures or of any State or Federal law or regulation.

3. The Tribe and the State agree to add the following as a new Paragraph 5 to the MOU:

5. For purposes of this Memorandum of Understanding, "business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe" means an entity owned exclusively by the Tribe and the Mohegan Tribe in which the Tribe and the Mohegan Tribe each maintain an equity ownership interest of not less than twenty-five (25) percent and includes any gaming services licensee engaged by such entity for the purpose of, and only to the extent such licensee is, operating video facsimiles or other commercial casino games on such entity's behalf.

4. The Tribe and the State agree that the amendments to the MOU shall only be effective if:

a. The Mohegan Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mohegan Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution of this agreement and the amendments to the MOU herein;

c. The General Assembly of the State has approved this agreement to amend the MOU and the Mohegan Agreement under C.G.S. Section 3-6c; and

d. The Mohegan Agreement and this agreement are approved or deemed approved by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act and its implementing regulations.

5. Except as modified by this agreement, the MOU remains in full force and effect.

STATE OF CONNECTICUT

By: [signature]

Name: Dannel P. Malloy

Title: Governor of Connecticut

Date: July 20, 2017

MASHANTUCKET PEQUOT TRIBE

By: [signature]

Name: Rodney Butler

Title: Chairman

Date: 7/20/17

Mashantucket Pequot Tribal Nation

TRIBAL COUNCIL

**RESOLUTION NUMBER TCR060817-02 of 06
OF THE
MASHANTUCKET PEQUOT TRIBAL COUNCIL,
THE GOVERNING BODY
OF THE
MASHANTUCKET PEQUOT TRIBE**

**Approval of Agreement with the State of Connecticut to Amend the Final Mashantucket Pequot Gaming Procedures 56 Fed. Reg. 24996 (May 31, 1991); Approval of the Agreement to amend the Memorandum of Understanding between the State of Connecticut and the Mashantucket Pequot Tribe dated January 13, 1993 as Amended on April 30, 1993 and April 25, 1994**

**WHEREAS**, the Mashantucket Pequot Tribe (the "Tribe") also known as the Mashantucket Pequot Tribal Nation (the "Tribe") is a federally-recognized, Indian Tribe; and

**WHEREAS**, the Mashantucket Pequot Tribal Council (the "Council") is the duly-authorized Governing Body of the Tribe pursuant to the Constitution and By-Laws of the Tribe, and is a federally-recognized, Indian Tribal Government; and

**WHEREAS**, the Mission Statement of the Mashantucket Pequot Tribal Nation pursuant to TCR022499-01 states, "*...the ultimate goal is to protect and advance the Sovereign Rights of the Tribal Nation in order to build and preserve a cultural, social and economic foundation that can never be undermined or destroyed.*"; and

**WHEREAS**, the Mission Statement of the Tribal Council, as amended pursuant to TCR011410-03, is to preserve, protect and advance the Mission Statement of the Tribe for the benefit of the Mashantucket Pequot Tribal Nation; and

**WHEREAS**, on May 31, 1991, the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991) ("Gaming Procedures") were issued by the United States Secretary of the Interior;

**WHEREAS**, on January 13, 1993, the Tribe entered a memorandum of understanding with the State of Connecticut (amended on April 30, 1993 and April 25, 1994) ("MOU") to set forth certain matters regarding implementation of the Gaming Procedures; and

**WHEREAS,** the Tribe desires to enter into certain agreements with the State (the "Amendments") to confirm that the enactment of State law to authorize a business entity jointly and exclusively owned by the Mashantucket Pequot Tribe and the Mohegan Tribe to own and operate a commercial casino gaming facility in the State of Connecticut shall not affect the rights and responsibilities of the Mashantucket Pequot Tribal Nation, the Mohegan Tribe or the State under the Gaming Procedures or the MOU or any benefits derived by any party therefrom and, accordingly, to amend certain provisions of the Gaming Procedures and the MOU; and

**WHEREAS,** the Tribal Council, with the assistance of its staff and the Office of Legal Counsel, has reviewed the Amendments, which Amendments shall be substantially in the form attached hereto as ***Exhibit A***, and desires to approve same.

**THEREFORE BE IT RESOLVED,** that the Mashantucket Pequot Tribal Council hereby approves the Amendments, substantially in the form attached hereto as ***Exhibit A***.

**BE IT FURTHER RESOLVED**, that either Rodney A. Butler, as Chairman of the Tribal Council or Richard Sebastian, as the Vice-Chairman of the Tribal Council is hereby authorized to execute and deliver the Amendments on behalf of the Mashantucket Pequot Tribe.

**BE IT FINALLY RESOLVED**, that any officer of the Tribal Council is hereby authorized to execute and deliver all other documents which may be necessary or appropriate in connection therewith, and to do and perform all other acts and things necessary, convenient or proper to carry out the foregoing.

**RESOLUTION NUMBER TCR060817-02 OF 06**

Upon motion duly made and seconded, the foregoing Resolution was adopted by the following vote:

| | |
|---|---|
| Number of "Nucks" (Yes) Votes | 5 |
| Number of "Mata" (No) Votes | 1 |
| Number of "Tata" (Abstentions) | 1 |
| Number of Absent Members | 0 |

## CERTIFICATION

I, the undersigned, Rodney A. Butler, Chairman of the Mashantucket Pequot Tribal Council, do hereby certify that the Mashantucket Pequot Tribal Council is composed of **SEVEN (7)** members of whom **SEVEN (7)** were present, thereby constituting a quorum, at a duly called Mashantucket Pequot Tribal Council Meeting held on the **8th day of June, 2017**; and that the foregoing Resolution was adopted by the affirmative vote of **FIVE (5)** members.

Rodney A. Butler, Chairman
Mashantucket Pequot Tribal Council

Date: 7/7/17

ATTEST:

Crystal M. Whipple, Secretary
Mashantucket Pequot Tribal Council

Date: 7/6/17

APPROVED AS TO FORM:

Betsy Conway, General Counsel
Office of Legal Counsel

Date: 6/13/17

AGREEMENT

BETWEEN

THE MASHANTUCKET PEQUOT TRIBE

AND

THE STATE OF CONNECTICUT

The Mashantucket Pequot Tribe (the "Tribe") is the owner and operator of a gaming facility on the Mashantucket Pequot Reservation pursuant to the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991) (the "Procedures") and the provisions of the Indian Gaming Regulatory Act, Pub.L. 100-297, 25 U.S.C. §§2701 et seq.

The State and the Tribe wish to confirm by this Agreement ("Agreement") that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") and the Tribe (together the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Tribe under the Procedures or any benefits derived by any party therefrom.

1. The Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance for any purpose by a business entity jointly and exclusively owned by the Tribes shall not terminate the moratorium established under Section 15(a) of the Procedures. Accordingly, the parties agree to modify the first sentence of Section 15(a) of the Procedures to read:

> Notwithstanding the provisions of section 3(a)(ix), the Tribe shall have no authority under this Compact to conduct Class III video facsimile games as defined pursuant to section 3(a)(ix) unless and until either: (ia) it is determined by agreement between the Tribe and the State, or by a court of competent jurisdiction, that by virtue of the existing laws and regulations of the State the operation of video facsimiles of games of chance would not be unlawful on the ground that the Tribe is not located in a State that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. §2710(d)(1)(B) (it being understood and agreed that there is a present controversy between the Tribe and the State in which the Tribe takes the position that such gaming is permitted under the existing laws of the State and the State takes the position that such gaming is not permitted under the existing laws of the State), provided that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut to operate video facsimiles of games of chance shall not be deemed a law that permits such gaming for any purpose by any person, organization, or entity within the meaning of 25 U.S.C. §2710(d)(1)(B); or (ii) the existing laws or regulations of the State are amended to expressly authorize the operation of any video games of chance for any purpose by any person, organization or entity other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut.

2. The Tribe and the State hereby agree to modify Section 17(d) of the Procedures to read:

Nothing in this Compact shall be deemed to waive the right of the Tribe to request negotiations for a tribal-state compact with respect to a Class III gaming activity which is to be conducted on the Reservation but is not permitted under the provisions of this Compact, including forms of Class III gaming which were not permitted by the State for any purpose by any person, organization, or entity, other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut, at the time when this Compact was negotiated but are subsequently so permitted by the State, in accordance with 25 U.S.C. §2710(d)(3)(A); provided, however, that this sub-section shall not be deemed to authorize the Tribe to initiate a new request for negotiations regarding the terms of this Compact applicable to forms of gaming authorized by section 3(a) of this Compact, except to the extent that existing state law relating to such forms of gaming are changed, other than a change in State law permitting a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut to engage in such gaming, or to the extent that the State voluntarily consents to such negotiations.

3. The Tribe and the State agree to amend Section 2 of the Procedures by adding the following subsection (dd):

(dd) "Business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe of Indians of Connecticut" means an entity created under State law owned exclusively by the Tribe and the Mohegan Tribe of Indians of Connecticut in which the Tribe and the Mohegan Tribe of Indians of Connecticut each maintain an equity ownership interest of not less than [25] percent.

4. The Tribe hereby waives any defense that it may have by virtue of its sovereign immunity to enable the State to enforce, in the United States District Courts, without the need to exhaust tribal remedies, the provisions of this Agreement and to enforce, in the United States District Courts, any award of injunctive relief or damages resulting therefrom, and the Tribe further consents to the exercise of jurisdiction over such action and over the Tribe by the United States District Courts with respect to such actions.

5. This Agreement shall become effective upon the occurrence of all of the following:

a. The Mohegan Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mohegan Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution of this Agreement and the amendments to the Procedures therein, including the waiver of

sovereign immunity set forth in paragraph 4.

c. The General Assembly of the State has approved this Agreement and the Mohegan Agreement pursuant to C.G.S. Section 3-6c or otherwise; and

d. The Secretary of the Interior has approved this Agreement and the Mohegan Agreement, and amended the Procedures pursuant to applicable law and published notice thereof in the Federal Register.

6. Except as modified by this Agreement, the Procedures remain in full force and effect.

| STATE OF CONNECTICUT | MASHANTUCKET PEQUOT TRIBE |
|---|---|
| By:______________________ | By:______________________ |
| Name:____________________ | Name:____________________ |
| Title:____________________ | Title:____________________ |
| Date:____________________ | Date:____________________ |

MEMORANDUM OF UNDERSTANDING
BETWEEN
THE MASHANTUCKET PEQUOT TRIBE
AND
THE STATE OF CONNECTICUT

The State of Connecticut (the "State") and the Mashantucket Pequot Tribe (the "Tribe") entered into a Memorandum of Understanding on January 13, 1993, as amended on April 30, 1993 and April 25, 1994 (the "MOU"), to set forth certain matters regarding implementation of the final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (the "Procedures"); and

The State and the Tribe wish to confirm that the enactment of any State law to authorize a business entity jointly and exclusively owned by the Mohegan Tribe of Indians of Connecticut (the "Mohegan Tribe") and the Mashantucket Pequot Tribe (together, the "Tribes") to own and operate a commercial casino gaming facility shall not affect the rights and responsibilities of the Tribe or the State under the MOU or any benefits derived by any party therefrom.

1. The Tribe and the State hereby agree that a change in State law to authorize the operation of any video games of chance for any purpose by a business entity jointly and exclusively owned by the Tribes shall not affect the parties' rights and obligations under the MOU. Accordingly, the parties agree to amend Paragraph 1 of the MOU to read:

> In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Procedures on the operation of electronic lottery devices and other video facsimiles (as defined in the Procedures), the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Procedures on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Procedures, subject to the requirements of section 7(c) of the Procedures and the Technical Standards for Video Facsimile Games as set forth in section 31 of Appendix A of the Procedures. The Tribe agrees that, so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person <u>other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe</u> and no ~~other~~ person within the State <u>other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe</u> lawfully operates video facsimiles or other commercial casino games, the Tribe will contribute to the State a sum (the "Contribution") equal to twenty five percent (25%) of gross operating

revenues of video facsimile games operated by the Tribe. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty five percent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State, including any Minimum Contribution paid by the Tribe pursuant to paragraph (2) below. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimile devices and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Procedures. Upon any failure by the Tribe to satisfy its obligations to the State hereunder, this Memorandum of Agreement shall cease to be of any force or effect and the moratorium established pursuant to section 15(a) of the Procedures shall without any requirement for further action by either party be in full force and effect in accordance with its terms.

2. The parties hereby agree to amend Paragraph 3 of the MOU to read:

It is understood and agreed by the parties that this agreement constitutes an accommodation by both the State and the Tribe in order to satisfy their respective interests and to resolve the matters addressed by section 15(a) of the Procedures in an orderly and non-adversarial manner, and does not constitute an admission or concession by either the State or the Tribe as to any legal or factual questions which might otherwise arise pursuant to section 15(a) of the Procedures. The Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe and no ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not assert the right to operate video facsimile games except in accordance with this Memorandum of Understanding. In the event that any change in State law is enacted to permit the operation of video facsimiles or other commercial casino games by any ~~other~~ person other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe or any ~~other~~ person within the State other than a business entity jointly and exclusively owned by the Tribe and the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimile games by virtue of this Memorandum of Understanding, but the Tribe may thereupon assert any rights which it may otherwise have under the Procedures; provided, however, that in such event neither party shall by bound by any of the provisions hereof nor shall either party be barred from taking any position inconsistent with this Memorandum of Understanding; and further provided, that in the event that the Mohegan Tribe lawfully operates video facsimile games or other commercial casino games under the provisions of the Indian Gaming Regulatory Act, the Tribe shall not thereby be relieved of its obligations hereunder but shall, subject to the provisions of paragraph (4) hereof,

continue to be bound by the provisions of this Memorandum of Understanding so long as the Mohegan Tribe makes a contribution to the State with respect to its operation of video facsimile games which is at least equivalent to that required pursuant to the Memorandum of Understanding of even date entered into between the Mohegan Tribe and the State as appended hereto as an Exhibit. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the Procedures or the effect of any provision of the Procedures or of any State or Federal law or regulation.

3. The Tribe and the State agree that the amendments to the MOU shall only be effective if:

a. The Mohegan Tribe has authorized and entered into an agreement with the State in substantially the same form hereof ("Mohegan Agreement");

b. The Tribe has adopted a tribal council resolution authorizing the execution of this agreement and the amendments to the MOU herein;

c. The General Assembly of the State has approved this agreement to amend the MOU and the Mohegan Agreement under C.G.S. Section 3-6c or otherwise; and

d. The United States Secretary of the Interior has approved the Mohegan Agreement and this agreement.

4. Except as modified by this agreement, the MOU remains in full force and effect.

| STATE OF CONNECTICUT | MASHANTUCKET PEQUOT TRIBE |
|---|---|
| By:____________________ | By:____________________ |
| Name:__________________ | Name:__________________ |
| Title:__________________ | Title:__________________ |
| Date:__________________ | Date:__________________ |

DENISE W. MERRILL
SECRETARY OF THE STATE
CONNECTICUT

August 1, 2017

Chairman Kevin Brown
The Mohegan Tribe
13 Crow Hill Road
Uncasville, CT 06382

Chairman Rodney Butler
Mashantucket Pequot Tribal Nation
2 Matts Path
PO Box 3060
Mashantucket, CT 06338

Dear Chairman Brown and Chairman Butler,

Enclosed you will find a copy of Connecticut General Assembly's 2016-2017 House Joint Resolution 301 which passed the State House of Representatives on 7/24/17, the State Senate on 7/31/17 and received by my office on 8/1/17. Please do not hesitate to contact my office with any questions.

Sincerely,

Denise W. Merrill

Denise W. Merrill

EMERGENCY CERTIFICATION

SC ______ HC ______ FILE NO. ______

HOUSE JT. RES. NO. 301

RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT.

STATE OF CONNECTICUT
HOUSE OF REPRESENTATIVES

JUL 24 2017

ADOPTED

Frederick J. Jortner

STATE OF CONNECTICUT
SENATE

JUL 31 2017

ADOPTED

IN CONCURRANCE

LCO NO. 9217

INTRODUCED BY:

REP. ARESIMOWICZ, 30th Dist.
SEN. LOONEY, 11th Dist.

adopted

STATE OF CONNECTICUT
HOUSE OF REPRESENTATIVES

Martin M. Looney

JUL 24 2017

BT

+ TRANS.
TO SENATE ☒
TO GOVERNOR ☐

Frederick J. Jortner

**EMERGENCY CERTIFICATION**

(To Bring Out)

As provided in Section 2-26 of the Connecticut General Statutes and Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, we, **JOE ARESIMOWICZ**, Speaker of the House of Representatives, and **MARTIN M. LOONEY**, President Pro Tempore of the Senate, hereby certify that a certain bill/resolution namely:

~~Bill~~ HJR No. 301 entitled:

***RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT***

necessitates action by the General Assembly for the following reasons:

in accordance with Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, to enact legislation needed to implement the state budget for the biennium beginning July 1, 2017.

Dated at Hartford, Connecticut this 24th day of July, 2017.

**JOE ARESIMOWICZ**,
Speaker of the House of Representatives

Martin M Looney

**MARTIN M. LOONEY**,
President Pro Tempore of the Senate

**EMERGENCY CERTIFICATION**

(To Raise)

As provided in Section 2-26 of the Connecticut General Statutes and Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, we, **JOE ARESIMOWICZ**, Speaker of the House of Representatives, and **MARTIN M. LOONEY**, President Pro Tempore of the Senate, hereby certify that a certain bill/resolution namely:

HJR
~~Bill~~ No. 301 entitled:

***RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT***

necessitates action by the General Assembly for the following reasons:

in accordance with Rules 9 and 17 of the Joint Rules of the Senate and the House of Representatives of the State of Connecticut for the June Special Session, 2017, to enact legislation needed to implement the state budget for the biennium beginning July 1, 2017.

Dated at Hartford, Connecticut this 24th day of July, 2017.

**JOE ARESIMOWICZ**
Speaker of the House of Representatives

Martin M. Looney

**MARTIN M. LOONEY**,
President Pro Tempore of the Senate

STATE OF CONNECTICUT

QUI TRANSTULIT SUSTINET

General Assembly

EMERGENCY CERTIFICATION

**House Joint Resolution No. 301**

*June Special Session, 2017*

LCO No. **9217**

*09217*

Referred to Committee on

Introduced by:
REP. ARESIMOWICZ, 30th Dist.
SEN. LOONEY, 11th Dist.

### *RESOLUTION APPROVING AMENDMENTS TO THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES AND THE TRIBAL-STATE COMPACT.*

Resolved by this Assembly:

WHEREAS, on July 20, 2017, the Governor executed amendments to the Final Mashantucket Pequot Gaming Procedures and the corresponding Memorandum of Understanding between the State of Connecticut and the Mashantucket Pequot Tribe and on said date the Governor also executed amendments to the Tribal-State Compact and the corresponding Memorandum of Understanding between the State of Connecticut and the Mohegan Tribe of Indians of Connecticut; and

WHEREAS, such amendments will authorize said tribes to jointly operate a gaming facility in East Windsor, Connecticut pursuant to public act 17-89; and

WHEREAS, such amendments were submitted to the General Assembly for approval pursuant to section 3-6c of the general statutes.

NOW, THEREFORE, BE IT RESOLVED, that such amendments are approved.

BE IT FURTHER RESOLVED, that the clerks of the House of Representatives and the Senate cause a copy of this resolution to be sent to the Governor.

# Exhibit 02

# Conversation Contents

**Pequot and Mohegan Letters**

**Attachments:**

/23. Pequot and Mohegan Letters/1.1 draft approvl ltr Mashantucket Pequot Tribe 9.11.17.docx
/23. Pequot and Mohegan Letters/1.2 draft approvl ltrs Mohegan Tribe CT 9.11.17 SOL OIG.docx

## "Woodward, Troy" <troy.woodward@bia.gov>

| | |
|---|---|
| **From:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Sent:** | Mon Sep 11 2017 08:13:10 GMT-0600 (MDT) |
| **To:** | Paula Hart <paula.hart@bia.gov> |
| **Subject:** | Pequot and Mohegan Letters |
| **Attachments:** | draft approvl ltr Mashantucket Pequot Tribe 9.11.17.docx draft approvl ltrs Mohegan Tribe CT 9.11.17 SOL OIG.docx |

Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.

(b)(5) [redacted]

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

## "Hart, Paula" <paula.hart@bia.gov>

| | |
|---|---|
| **From:** | "Hart, Paula" <paula.hart@bia.gov> |
| **Sent:** | Mon Sep 11 2017 08:17:18 GMT-0600 (MDT) |
| **To:** | "Woodward, Troy" <troy.woodward@bia.gov>, Eric Shepard <eric.shepard@sol.doi.gov>, "Hay, John" <john.hay@sol.doi.gov> |
| **Subject:** | Re: Pequot and Mohegan Letters |

Thanks Troy,

I am forwarding this edit to Eric and John, hopefully Eric will have a chance to talk to Jim and

these will address what I discussed with him.

Paula

On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

> Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.
>
> (b) (5) [redacted]
>
> Troy M. Woodward
> Senior Policy Advisor
> Office of Indian Gaming
> 1849 C Street, N.W.
> Washington, DC
> 202.219.4066

## "Hay, John" <john.hay@sol.doi.gov>

| | |
|---|---|
| **From:** | "Hay, John" <john.hay@sol.doi.gov> |
| **Sent:** | Mon Sep 11 2017 13:32:31 GMT-0600 (MDT) |
| **To:** | "Hart, Paula" <paula.hart@bia.gov> |
| **CC:** | "Woodward, Troy" <troy.woodward@bia.gov>, Eric Shepard <eric.shepard@sol.doi.gov> |
| **Subject:** | Re: Pequot and Mohegan Letters |

(b) (5) [redacted]

(b) (5) [redacted]

On Mon, Sep 11, 2017 at 10:17 AM, Hart, Paula <paula.hart@bia.gov> wrote:

> Thanks Troy,
>
> (b) (5) [redacted]
>
> Paula
>
> On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>
>> Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.
>>
>> (b) (5) [redacted]

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

## "Hart, Paula" <paula.hart@bia.gov>

| | |
|---|---|
| **From:** | "Hart, Paula" <paula.hart@bia.gov> |
| **Sent:** | Mon Sep 11 2017 13:37:17 GMT-0600 (MDT) |
| **To:** | "Hay, John" <john.hay@sol.doi.gov> |
| **CC:** | "Woodward, Troy" <troy.woodward@bia.gov>, Eric Shepard <eric.shepard@sol.doi.gov> |
| **Subject:** | Re: Pequot and Mohegan Letters |

Great that works for us. Has Jim said anything to Eric about adding something?

On Mon, Sep 11, 2017 at 3:32 PM, Hay, John <john.hay@sol.doi.gov> wrote:

(b) (5) [redacted]

[redacted]

On Mon, Sep 11, 2017 at 10:17 AM, Hart, Paula <paula.hart@bia.gov> wrote:

Thanks Troy,

(b) (5) [redacted]

Paula

On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.

(b) (5) [redacted]

[redacted]

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--

John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

## "Hay, John" <john.hay@sol.doi.gov>

| | |
|---|---|
| **From:** | "Hay, John" <john.hay@sol.doi.gov> |
| **Sent:** | Mon Sep 11 2017 13:38:06 GMT-0600 (MDT) |
| **To:** | "Hart, Paula" <paula.hart@bia.gov> |
| **CC:** | "Woodward, Troy" <troy.woodward@bia.gov>, Eric Shepard <eric.shepard@sol.doi.gov> |
| **Subject:** | Re: Pequot and Mohegan Letters |

[redacted]

On Mon, Sep 11, 2017 at 3:37 PM, Hart, Paula <paula.hart@bia.gov> wrote:

> Great that works for us. Has Jim said anything to Eric about adding something?
>
> On Mon, Sep 11, 2017 at 3:32 PM, Hay, John <john.hay@sol.doi.gov> wrote:
>
> > [redacted]
> >
> > On Mon, Sep 11, 2017 at 10:17 AM, Hart, Paula <paula.hart@bia.gov> wrote:
> >
> > > Thanks Troy,
> > >
> > > [redacted]

Paula

On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.

(b) (5) [redacted]

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--

John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

--

John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

**"Hart, Paula" <paula.hart@bia.gov>**

---

**From:** "Hart, Paula" <paula.hart@bia.gov>
**Sent:** Mon Sep 11 2017 13:39:14 GMT-0600 (MDT)
**To:** "Hay, John" <john.hay@sol.doi.gov>

**CC:** "Woodward, Troy" <troy.woodward@bia.gov>, Eric Shepard <eric.shepard@sol.doi.gov>

**Subject:** Re: Pequot and Mohegan Letters

ok, well we'll be ready!

On Mon, Sep 11, 2017 at 3:38 PM, Hay, John <john.hay@sol.doi.gov> wrote:

> Not that I am aware of.
>
> On Mon, Sep 11, 2017 at 3:37 PM, Hart, Paula <paula.hart@bia.gov> wrote:
>
>> Great that works for us. (b) (5) [redacted]
>>
>> On Mon, Sep 11, 2017 at 3:32 PM, Hay, John <john.hay@sol.doi.gov> wrote:
>>
>>> (b) (5) [redacted]
>>>
>>> On Mon, Sep 11, 2017 at 10:17 AM, Hart, Paula <paula.hart@bia.gov> wrote:
>>>
>>>> Thanks Troy,
>>>>
>>>> (b) (5) [redacted]
>>>>
>>>> Paula
>>>>
>>>> On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>>>>
>>>>> Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.
>>>>>
>>>>> (b) (5) [redacted]
>>>>>
>>>>> Troy M. Woodward
>>>>> Senior Policy Advisor
>>>>> Office of Indian Gaming
>>>>> 1849 C Street, N.W.
>>>>> Washington, DC
>>>>> 202.219.4066
>>>
>>> --
>>> John R. Hay
>>> Assistant Solicitor, Branch of Self-Governance and Economic Development
>>> Division of Indian Affairs
>>> Office of the Solicitor
>>> Department of the Interior
>>> 1849 C Street, NW, MS 6513
>>> Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

--
John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

## "Shepard, Eric" <eric.shepard@sol.doi.gov>

| | |
|---|---|
| **From:** | "Shepard, Eric" <eric.shepard@sol.doi.gov> |
| **Sent:** | Mon Sep 11 2017 19:45:59 GMT-0600 (MDT) |
| **To:** | "Hart, Paula" <paula.hart@bia.gov> |
| **CC:** | "Hay, John" <john.hay@sol.doi.gov>, "Woodward, Troy" <troy.woodward@bia.gov> |
| **Subject:** | Re: Pequot and Mohegan Letters |

(b) (5) [redacted] (b) (5) [redacted]

On Mon, Sep 11, 2017 at 3:39 PM, Hart, Paula <paula.hart@bia.gov> wrote:

ok, well we'll be ready!

On Mon, Sep 11, 2017 at 3:38 PM, Hay, John <john.hay@sol.doi.gov> wrote:

Not that I am aware of.

On Mon, Sep 11, 2017 at 3:37 PM, Hart, Paula <paula.hart@bia.gov> wrote:

Great that works for us. (b) (5) [redacted]

On Mon, Sep 11, 2017 at 3:32 PM, Hay, John <john.hay@sol.doi.gov> wrote:

(b) (5) [redacted]

[redacted]

On Mon, Sep 11, 2017 at 10:17 AM, Hart, Paula <paula.hart@bia.gov> wrote:

Thanks Troy,

[redacted]

Paula

On Mon, Sep 11, 2017 at 10:13 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

Paula, attached are the edited letters for Pequot and Mohegan. I downloaded these from DTS before editing so both have been through the surname process.

(b) (5) [redacted]

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

--
John R. Hay
Assistant Solicitor, Branch of Self-Governance and Economic Development
Division of Indian Affairs
Office of the Solicitor
Department of the Interior
1849 C Street, NW, MS 6513
Washington, DC 20240

Off. (202) 208-4553
Fax (202) 208-4115
john.hay@sol.doi.gov

--
Eric Shepard
Associate Solicitor
Division of Indian Affairs

Office of the Solicitor
Department of the Interior
1849 C Street, NW, Rm. 6511
Washington, DC 20240

Off. (202) 208-3233
Fax (202) 208-4115
eric.shepard@sol.doi.gov

**This e-mail (including attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If you are not the intended recipient or the employee or agent responsible for delivery of this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this e-mail or its contents is strictly prohibited. If you received this e-mail in error, please notify the sender immediately and destroy all copies.**

# Exhibit 03

# Conversation Contents

**Mohegan Compact Amendment due date**

## "Woodward, Troy" <troy.woodward@bia.gov>

| | |
|---|---|
| **From:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Sent:** | Tue Sep 12 2017 05:00:51 GMT-0600 (MDT) |
| **To:** | Steve Lowery <steve_lowery@ios.doi.gov> |
| **Subject:** | Mohegan Compact Amendment due date |

Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.

The Pequot document, though similar, is amending secretarial procedures, so has no deadline.

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

## "Lowery, Steve" <steve_lowery@ios.doi.gov>

| | |
|---|---|
| **From:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Sent:** | Tue Sep 12 2017 08:05:21 GMT-0600 (MDT) |
| **To:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.

On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

> Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
>
> The Pequot document, though similar, is amending secretarial procedures, so has no deadline.
>
> --

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

## "Woodward, Troy" <troy.woodward@bia.gov>

| | |
|---|---|
| **From:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Sent:** | Tue Sep 12 2017 08:06:43 GMT-0600 (MDT) |
| **To:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.

On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:

> Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.
>
> On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>
>> Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
>>
>> The Pequot document, though similar, is amending secretarial procedures, so has no deadline.
>>
>> --
>>
>> Troy M. Woodward
>> Senior Policy Advisor
>> Office of Indian Gaming
>> 1849 C Street, N.W.
>> Washington, DC
>> 202.219.4066
>
> --
> Steve F. Lowery

U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

## "Lowery, Steve" <steve_lowery@ios.doi.gov>

| | |
|---|---|
| **From:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Sent:** | Tue Sep 12 2017 08:08:11 GMT-0600 (MDT) |
| **To:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

great - thanks for the head's up.

On Tue, Sep 12, 2017 at 10:06 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:

> Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.
>
> On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
>
>> Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.
>>
>> On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>>
>>> Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
>>>
>>> The Pequot document, though similar, is amending secretarial procedures, so has no deadline.
>>>
>>> --
>>>
>>> Troy M. Woodward
>>> Senior Policy Advisor
>>> Office of Indian Gaming
>>> 1849 C Street, N.W.
>>> Washington, DC
>>> 202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

**"Lowery, Steve" <steve_lowery@ios.doi.gov>**

| | |
|---|---|
| **From:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Sent:** | Tue Sep 12 2017 11:37:07 GMT-0600 (MDT) |
| **To:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

he gave me back the packages and told Rob to expect rewrites. just let me know when you have everything.

he's still working on the [redacted] package.

On Tue, Sep 12, 2017 at 10:06 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.

On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.

On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed

approved.

The Pequot document, though similar, is amending secretarial procedures, so has no deadline.

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

## "Woodward, Troy" <troy.woodward@bia.gov>

| | |
|---|---|
| **From:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Sent:** | Tue Sep 12 2017 11:38:14 GMT-0600 (MDT) |
| **To:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

Ok, we have to run the revisions by SOL. I'll be in touch.

On Tue, Sep 12, 2017 at 1:37 PM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:

> he gave me back the packages and told Rob to expect rewrites. just let me know when you have everything.
>
> he's still working on th[redacted] package.
>
> On Tue, Sep 12, 2017 at 10:06 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>
> > Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.
> >
> > On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
> >
> > > Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.
> > >
> > > On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
> > >
> > > > Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
> > > >
> > > > The Pequot document, though similar, is amending secretarial procedures, so has no deadline.
> > > >
> > > > --
> > > >
> > > > Troy M. Woodward
> > > > Senior Policy Advisor
> > > > Office of Indian Gaming
> > > > 1849 C Street, N.W.
> > > > Washington, DC
> > > > 202.219.4066
> > >
> > > --
> > > Steve F. Lowery
> > > U.S. Department of the Interior
> > > Writer/Editor for Indian Affairs
> > > Office of the Executive Secretariat
> > > (202) 208-5291
> >
> > --
> >
> > Troy M. Woodward
> > Senior Policy Advisor
> > Office of Indian Gaming
> > 1849 C Street, N.W.
> > Washington, DC
> > 202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

## "Woodward, Troy" <troy.woodward@bia.gov>

| | |
|---|---|
| **From:** | "Woodward, Troy" <troy.woodward@bia.gov> |
| **Sent:** | Tue Sep 12 2017 13:46:19 GMT-0600 (MDT) |
| **To:** | "Lowery, Steve" <steve_lowery@ios.doi.gov> |
| **Subject:** | Re: Mohegan Compact Amendment due date |

Steve, Jim had some edits so this is bleeding over to tomorrow. We will get you the revised docs tomorrow.

On Tue, Sep 12, 2017 at 1:37 PM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:

> he gave me back the packages and told Rob to expect rewrites. just let me know when you have everything.
>
> he's still working on the [redacted] package.
>
> On Tue, Sep 12, 2017 at 10:06 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>
>> Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.
>>
>> On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
>>
>>> Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.
>>>
>>> On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>>>
>>>> Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
>>>>
>>>> The Pequot document, though similar, is amending secretarial procedures, so has no deadline.

> > > --
> > >
> > > Troy M. Woodward
> > > Senior Policy Advisor
> > > Office of Indian Gaming
> > > 1849 C Street, N.W.
> > > Washington, DC
> > > 202.219.4066
> >
> > --
> > Steve F. Lowery
> > U.S. Department of the Interior
> > Writer/Editor for Indian Affairs
> > Office of the Executive Secretariat
> > (202) 208-5291
>
> --
>
> Troy M. Woodward
> Senior Policy Advisor
> Office of Indian Gaming
> 1849 C Street, N.W.
> Washington, DC
> 202.219.4066

--
Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

**"Lowery, Steve" <steve_lowery@ios.doi.gov>**

**From:** "Lowery, Steve" <steve_lowery@ios.doi.gov>
**Sent:** Tue Sep 12 2017 14:23:03 GMT-0600 (MDT)
**To:** "Woodward, Troy" <troy.woodward@bia.gov>
**Subject:** Re: Mohegan Compact Amendment due date

ok - no worries. i'll be here tomorrow all day.

On Tue, Sep 12, 2017 at 3:46 PM, Woodward, Troy <troy.woodward@bia.gov> wrote:

> Steve, Jim had some edits so this is bleeding over to tomorrow. We will get you the revised docs tomorrow.
>
> On Tue, Sep 12, 2017 at 1:37 PM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
>
>> he gave me back the packages and told Rob to expect rewrites. just let me know when you have everything.
>>
>> he's still working on the [redacted] package.
>>
>> On Tue, Sep 12, 2017 at 10:06 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>>
>>> Timely email--Jim wants some changes to the letters--we will have these to him by 3 pm today.
>>>
>>> On Tue, Sep 12, 2017 at 10:05 AM, Lowery, Steve <steve_lowery@ios.doi.gov> wrote:
>>>
>>>> Yep - he didn't give either back to Rob yesterday. I just alerted him to the deadline. He'll ping Mr. Cason in their next scheduled meeting.
>>>>
>>>> On Tue, Sep 12, 2017 at 7:00 AM, Woodward, Troy <troy.woodward@bia.gov> wrote:
>>>>
>>>>> Hey Steve, I wanted to give you a heads-up that the due date for the Mohegan/CT class III gaming compact amendment is due on 09/16/2017. After that date, it will be deemed approved.
>>>>>
>>>>> The Pequot document, though similar, is amending secretarial procedures, so has no deadline.
>>>>>
>>>>> --
>>>>>
>>>>> Troy M. Woodward
>>>>> Senior Policy Advisor
>>>>> Office of Indian Gaming
>>>>> 1849 C Street, N.W.
>>>>> Washington, DC
>>>>> 202.219.4066
>>>>
>>>> --
>>>> Steve F. Lowery
>>>> U.S. Department of the Interior
>>>> Writer/Editor for Indian Affairs
>>>> Office of the Executive Secretariat
>>>> (202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--

Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

--

Troy M. Woodward
Senior Policy Advisor
Office of Indian Gaming
1849 C Street, N.W.
Washington, DC
202.219.4066

--

Steve F. Lowery
U.S. Department of the Interior
Writer/Editor for Indian Affairs
Office of the Executive Secretariat
(202) 208-5291

# Exhibit 4

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

SEP 15 2017

The Honorable Kevin P. Brown
Chairman, Mohegan Tribe of Indians of Connecticut
13 Crow Hill Road
Uncasville, Connecticut 06382

Dear Chairman Brown:

On August 2, 2017, the Department of the Interior received the Agreement between the Mohegan Tribe of Indians of Connecticut (Tribe) and the State of Connecticut (State) dated July 20, 2017, related to the conduct of Gaming by the Tribe. The Agreement memorializes amendments to the Tribal-State Compact previously entered into between the Tribe and the State. Specifically, the Agreement amends sections 2, 15(a), and 17(d) (Amendment) of the Tribal-State Compact.

We have completed our review of the Amendment. We return the Amendment to you to maintain the status quo as action on the Amendment is premature and likely unnecessary. The Amendment addresses the exclusivity provisions of the Gaming Compact. We find that there is insufficient information upon which to make a decision as to whether a new casino operated by the Mohegan and Mashantucket Pequot Tribes (Tribes) would or would not violate the exclusivity clauses of the Gaming Compact. The Tribes have entered an agreement with the State whereby they have agreed that the exclusivity provisions will not be breached by this arrangement. Therefore, our action is unnecessary at this time.

A similar letter is being sent to the Honorable Rodney Butler, Chairman, Mashantucket Pequot Indian Tribe, and the Honorable Dannel P. Malloy, Governor of Connecticut.

Sincerely,

Michael S. Black
Acting Assistant Secretary – Indian Affairs

Enclosure

cc: The Honorable Dean Heller
The Honorable Mark Amodei

United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

SEP 15 2017

The Honorable Rodney Butler
Chairman, Mashantucket Pequot Indian Tribe
P.O. Box 3060
Mashantucket, Connecticut 06338

Dear Chairman Butler:

On August 2, 2017, the Department of the Interior received the Agreement between the Mashantucket Pequot Indian Tribe (Tribe) and the State of Connecticut (State) dated July 20, 2017, related to the conduct of Class III Gaming by the Tribe. The Agreement memorializes amendments to the Mashantucket Pequot Gaming Procedures. Specifically, the Agreement amends sections 2, 15(a), and 17(d) (the Amendment) of the Gaming Procedures.

We have completed our review of the Amendment. We return the Amendment to you to maintain the status quo as action on the Amendment is premature and likely unnecessary. The Amendment addresses the exclusivity provisions of the Gaming Procedures. We find that there is insufficient information upon which to make a decision as to whether a new casino operated by the Mohegan and Mashantucket Pequot Tribes (Tribes) would or would not violate the exclusivity clauses of the Gaming Procedures. The Tribes have entered an agreement with the State whereby they have agreed that the exclusivity provisions will not be breached by this arrangement. Therefore, our action is unnecessary at this time.

A similar letter is being sent to the Honorable Kevin P. Brown, Chairman, Mohegan Tribe and the Honorable Dannel P. Malloy, Governor of Connecticut.

Sincerely,

Michael S. Black
Acting Assistant Secretary – Indian Affairs

Enclosure

cc: The Honorable Dean Heller
The Honorable Mark Amodei

# Exhibit 5

Mashantucket Pequot Tribal Nation

TRIBAL COUNCIL

September 15, 2017

The Hon. Ryan Zinke
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

The Hon. Jeffrey H. Wood
Assistant Attorney General, Environmental and Natural Resources Division (Acting)
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Gentlemen:

Attached is a letter the Mashantucket Pequot Tribe sent to the Department of the Interior requesting approval of amendments to its Procedures entered into between the Mashantucket Pequot Tribe and the State of Connecticut. By separate letter, the Mohegan Tribe sent a similar transmittal requesting approval of Compact amendments entered into between the Mohegan Tribe and the State of Connecticut.

We confirmed weeks ago with the Department that the Department required no further information to complete its review of our Compact amendments. There is no justification under the Indian Gaming Regulatory Act for the Department to take any action other than approval of the Compact amendments.

Please confirm that the approval of these amendments is forthcoming.

Very truly yours,

Rodney Butler, Chairman
Mashantucket Pequot Tribe

Cc: Craig Alexander, Section Chief, Indian Resources, USDOJ
Lisa Russell, Section Chief, Natural Resources, USDOJ
Jack Haugrud, Principal Deputy Solicitor, DOI
Eric Sheppard, Acting Deputy Solicitor, Indian Affairs, DOI